NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

I. V. SUTPHIN, CO.–ATLANTA, INC., Respondent.

No. 23262.

United States Court of Appeals
Fifth Circuit.

Feb. 8, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Lawrence J. Sherman, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Elliott Moore, Attorney, N. L. R. B., for petitioner.

Albert S. C. Millar, Jr., Jacksonville, Fla., for respondent.

Before TUTTLE, Chief Judge, and BELL and GOLDBERG, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

The Board seeks enforcement of its decision and order against Respondent, issued August 6, 1965.[1] 29 U.S.C.A. § 160(e). The Board affirmed and adopted the findings, conclusions and recommendations of the Trial Examiner to the effect that Respondent had violated §§ 8 (a) (1) and 8(a) (3) of the National Labor Relations Act. 29 U.S.C.A. §§ 158 (a) (1), (3). The only question before us is whether there is substantial evidence on the record as a whole to support these findings.

■ The § 8(a) (1) violation was based upon the company's interrogation of certain employees during a union organizational campaign concerning their union activities. We are of the opinion that there was substantial evidence to support the findings underlying the conclusion that § 8(a) (1) was violated and, accordingly, grant enforcement of this portion of the Board's order. As to the violation of § 8(a) (3), however, we deny enforcement and modify the order accordingly.

■ The violation of § 8(a) (3) was based upon the discharge of employee King Adams. The Examiner found a compelling inference of antiunion pur-

1. See I. V. Sutphin, Co.-Atlanta, Inc. and King Adams, 154 N.L.R.B. 178 (1965).

pose from the record as a whole as the basis for the discharge and ordered reinstatement and back pay. Respondent's position is that the discharge was not for an antiunion purpose but because of a threat which Adams made to another employee, Hollifield Warthen.

In November, 1964, in the midst of an organizational campaign by the Teamsters Union[2] at Respondent's plant, Respondent mailed a letter to all employees setting out its opposition to the union. It read in part, "If you are threatened by any union organizer or by any other employee of this Company, please immediately report it to me [Mr. Cooley, Manager] or to your immediate supervisor."

The Trial Examiner, as will be seen, confused the occasion of the threat with an event which occurred on the previous day and concluded that the threat was in reality only jest. Coupling this with the fact that Adams was known to management as a union adherent, it was an easy matter to draw an inference of antiunion purpose in the discharge. This misapprehension of fact caused the Trial Examiner to assume a premise, i. e., that there was not a threat, and this led him into error.

Warthen, age 61 and no match physically to the younger Adams, was approached by Adams on the morning of December 11 at Warthen's work position. This was shortly before lunch and during working hours. Knight was working alongside Warthen. Adams' place of work was a good distance away. Adams asked Warthen if he was going to join the union. Warthen replied that he knew nothing about it, meaning the union. Adams then said that if he did not join he was going to take him outside the gate and whip him. Knight heard the conversation and directed Adams to go back to his place of work and leave Warthen alone, saying that Adams talked too much.

At about 1:00 p. m. Warthen reported what had happened to the manager. He asked the manager for protection from Adams. The manager stated that he would protect him, and then sent for Knight in an effort to verify the story. Knight confirmed what Warthen had said about Adams' activity. Warthen was then called back into the office by the manager so as to make certain what had happened. It then developed that Adams had made a similar statement to Warthen at Warthen's home about a week earlier.

Adams was then summoned to the office and discharged. He denied the threat and testified that he said to the manager relative to Warthen, "Go and bring him here. He won't say nothing in front of my face, he wouldn't do it." It was clear, however, that he was referring to an occurrence on another occasion. He, in fact, denied the entire event in question. It was his testimony that the conversation with Warthen took place on the day before during the lunch hour and that he was simply joking. He stated that Warthen, Knight, and McKinney were present at the time. McKinney did not testify. There was no other testimony that he was present. The General Counsel, in rebuttal, offered the testimony of Dixon who stated that he was present during the luncheon conversation on the day before and that Adams said that anyone who did not vote for the union was a fool and needed beating and that everyone laughed. He stated that Knight and Warthen were the others present.

It thus appears that there was no contradiction of what happened at Warthen's work position on December 11. The only testimony with regard to that happening was that of Warthen and Knight,

2. Truckdrivers, Warehousemen & Helpers of Jacksonville, Local Union No. 512, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

and that of the manager based on what they repeated to him. Adams and Dixon testified as to an event on another day. Adams denied even appearing at the work position or having any conversation with Warthen on the day in question.[3] The Trial Examiner might have concluded that Adams was joking at the luncheon meeting the day before but that was a different event.

Warthen, Knight and the manager considered Adams' statement to be a threat. The manager testified that on their second conversation Warthen said he, Warthen, was an old man and didn't want any trouble. He would rather quit his job and leave than have trouble over the union. The manager reassured him and decided then that Adams would have to be discharged in the interest of employee harmony. Their view of the character of the statement is supported by the earlier statement of Adams to Warthen at Warthen's home. Mattie Hopkins testified as to this. She was present. She said that Adams stated to Warthen that he would beat him if he did not join the union. She chided Adams and Warthen for not getting along better. She saw that Warthen was becoming angry and directed Adams to leave the house. Adams testified prior to Warthen, Knight, Hopkins and the manager and was not offered to rebut their unrefuted testimony.

There was evidence that Adams talked a lot and was a prankster. The assistant manager knew of this propensity on the part of Adams. The Trial Examiner used this background along with the testimony about the luncheon conversation to sustain a finding that there was no threat on the day in question. He then found the necessary antiunion animus in the fact that the assistant manager and the superintendent had each inquired of Adams as to his feelings about the union and had received the response that he looked with favor on the union. This conclusion might rest on a sound factual basis if the facts warranted a subsidiary finding or conclusion of fact that the statement of Adams to Warthen was a joke and not a threat. This, however, is not the case. There is no substantial evidence to warrant the factual conclusion that the statement was not a threat.

We come then to the ultimate question of whether Adams was discharged for an antiunion purpose. It must be considered in the factual context of Adams being a known union adherent on the one hand and a threat to Warthen on the other. To this must be added the additional fact that the company had impliedly warned all of its employees not to threaten other employees during the union campaign. This warning was in the form of the letter, which Adams admitted receiving, asking the employees to report any threats made.

The law applicable to the issue here is clear and may be succinctly stated. The burden is upon the General Counsel to prove and not on the employer to disprove that the purpose of the discharge was to interfere with rights accruing to Adams under §§ 8(a)(3) and (1) of the Act. The Act does not insulate an employee from discharge for engaging in conduct disruptive of harmonious employee relations. Indeed, an employer may discharge for cause or no cause at all. It is only when antiunionism is the motive for the discharge that the Act is violated. N. L. R. B. v. Brennan's, Inc., 5 Cir., 1966, 366 F.2d 560; N. L. R. B. v. Soft Water Laundry, Inc., 5 Cir., 1965, 346 F.2d 930; Schwob Mfg. Co. v. N. L. R. B., 5 Cir., 1962, 297 F.2d 864; and N. L. R. B. v. McGahey, 5 Cir., 1956, 233 F.2d 406. The burden of proof is carried only when substantial evidence pointing toward the unlawful motive appears from the record taken as a whole. N. L. R. B. v. Brown, 1965, 380 U.S. 278, 291, 85 S.Ct. 980,

---

3. The Trial Examiner did not find that the occurrence in question did not happen; only that it amounted to jest.

13 L.Ed.2d 839, 849; Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

■ The finding of the § 8(a) (1) violations here will not carry the day for the conclusion that the discharge was inspired and motivated by antiunionism. To be sure a § 8(a) (3) violation makes out a § 8(a) (1) violation, but the converse does not follow. Whether the § 8(a) (3) charge stands or falls will depend upon the weight of the evidence touching on the charge. In this connection the § 8(a) (1) violations and the knowledge which management had of Adams' feeling on the union question were significant factors to be considered by the Examiner and by the Board in determining motive for the discharge. Nevertheless, we have often sustained § 8(a) (1) charges while rejecting findings of § 8(a) (3) violations stemming from employee discharges. N. L. R. B. v. Brennan's, Inc.; N. L. R. B. v. Soft Water Laundry, Inc.; Schwob Mfg. Co. v. N. L. R. B.; and N. L. R. B. v. McGahey, all supra, and cases therein cited.

■ It is clear from the evidence that Adams threatened Warthen with physical violence. This was cause for the discharge. The only evidence to sustain a finding of improper motive in the discharge consists of the opposition of the company to unionization, the interrogations, including the interrogation of Adams, which resulted in the § 8(a) (1) violations, and the general background material which showed that Adams was a talker and jokester on other occasions. This is insufficient to sustain the burden of showing an improper motive under the circumstances. That substantiality necessary for us to sustain the finding of the Board is lacking.

The order will be enforced except as to ¶¶ 2(a) and (c) thereof which relate to employee Adams.

Enforced in part; denied in part.