**GOODYEAR TIRE & RUBBER COMPANY and Highway Transportation Department, Petitioner-Cross Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.**

**No. 71-1764.**

United States Court of Appeals, Fifth Circuit.

March 20, 1972.

---

William F. Gardner, Birmingham, Ala., Arthur L. Sutton, Legal Dept. Goodyear Tire & Rubber Co., Akron, Ohio, John J. McMahon, Jr., Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., for petitioner Goodyear Tire & Rubber Company.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., Walter C. Phillips, Director, N. L. R. B., 10th Region, Atlanta, Ga., Jerome Weinstein, Washington, D. C., Peter G. Nash, Acting Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Leonard Wagman, Harold J. Engel, Attys., N. L. R. B., for respondent.

Before MORGAN and CLARK, Circuit Judges, and RUBIN,* District Judge.

LEWIS R. MORGAN, Circuit Judge:

The issue on this appeal is whether there is substantial evidence in the record to support the Board's decision which overturned the holding by the Trial Examiner and held that Goodyear Tire and Rubber Company violated Section 8(a) (3) of the Act [1] by discharging an employee because of his union activities. Having found a substantial basis in the record to support the Board's

holding, we grant the petition for enforcement.

Richard O. Dobbs was an employee of Goodyear. Under contractual arrangement with Greyhound Bus Lines, Goodyear assigned five of its employees to the Greyhound bus terminal in Atlanta, Georgia, for the purpose of changing and repairing bus tires. As one of these employees, Dobbs' principal duties were to perform various types of manual labor in connection with the tire maintenance program. Dobbs immediate superior was Foreman James M. Porter.

In December of 1970 Goodyear changed its existing two-shift-per-day schedule and initiated a new work schedule providing for three shifts on each day. When Dobbs learned of the new work schedule on December 22nd, he and another Goodyear employee, John Jennings, approached Porter and complained about having their hours changed. In the course of the conversation Dobbs informed Porter that he was going to seek union representation because the employees needed a union in order to "have a say-so as to what hours we would work". Porter replied that if the employees selected a union they would have to punch a time clock, pay their own insurance premiums, and forfeit the right to make up days lost due to sickness.

On January 26, 1971, Porter ordered Dobbs to work the third shift. Dobbs again complained to Porter about the three-shift work schedule and repeated his view that the employees needed union representation. Dobbs then informed Porter that he would take up the matter of shift changes with Porter's superior, District Field Manager E. D. Tracy.

The next day Dobbs went to Tracy's office to complain about the schedule changes. During this conversation Dobbs stated that the employees needed a union and Tracy replied that he remembered Dobbs having had some trou-

*Hon. Alvin B. Rubin, U. S. District Judge, sitting by designation.

1. National Labor Relations Act, as amended, 29 U.S.C. § 151 et seq.

ble with a union on a previous job. When Tracy suggested that Dobbs resign if the working conditions were unsatisfactory, Dobbs refused saying he "was going to try to make it better for the next guy that was hired. . . . ".

On January 29, 1971, Dobbs contacted a union representative and obtained several authorization cards and pamphlets. Dobbs then discussed forming a union with his fellow employees and obtained authorization card signatures from all but one of them.

On February 9, 1971, Dobbs was discharged by Goodyear. The final decision to fire Dobbs was approved by Tracy who took action after discussing the matter with Porter. In a letter authorizing Dobbs' termination Tracy stated as follows:

> "After talking to you this morning we are in agreement with your thought that Mr. Dobbs should be discharged due to his lack of cooperation with you and with Greyhound supervisors and his attitude in general as regards work, and though it will impair your servicing of buses somewhat you may discharge Mr. Dobbs."

At the hearing before the Trial Examiner, Tracy testified that Dobbs was fired because of several complaints Goodyear had received from Greyhound personnel. Tracy testified that Dobbs was not performing satisfactory work and that Goodyear's "relations with Greyhound were deteriorating from things that he (Dobbs) was doing".

Tracy's testimony was supported by Greyhound Supervisor John W. Carter, who stated that he had received several complaints that Dobbs caused work delays by talking for long periods of time with other employees. On one particular occasion it became necessary to remove a bus from the schedule because Dobbs was talking and failed to repair a tire on time. Carter complained several times to Goodyear about Dobbs' work performance.

At the close of the evidence the Trial Examiner held that Goodyear violated Section 8(a) (1) of the Act by threatening employees with reprisals if they formed a union. This holding is not challenged by Goodyear on appeal.

However, as to the Section 8(a) (3) charge, the Trial Examiner held that Dobbs' discharge was provoked not by his union activities but by complaints from Greyhound.

■ On review the Board affirmed the Section 8(a) (1) violation but reversed the Trial Examiner's holding that Goodyear did not violate Section 8(a) (3). Considering the evidence in toto, the Board found that the General Counsel made out a prima facie case of unlawful motivation which Goodyear failed to rebut. For the reasons that follow, we find ample evidence in the record to support the Board's holding.

■■ On a petition for enforcement we are bound by the general principle that the Board's decision may not be overturned if supported by substantial evidence in the record as a whole. Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; N.L.R.B. v. Brown, 1965, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839. In applying the substantial evidence test to cases where the Board has reversed the holding of the Trial Examiner, this court has attached much significance to credibility choices made by the Trial Examiner. Compare Dryden Manufacturing Company v. N.L.R.B., 5 Cir. 1970, 421 F.2d 267, with Southwire Company v. N. L.R.B., 5 Cir. 1967, 383 F.2d 235. The reason for this rule is that the Trial Examiner obviously has the superior advantage in selecting which witness to believe. On the other hand, it is not the function of this court to deny enforcement simply because the evidence might reasonably support other conclusions or because we might have reached a different conclusion had the matter come before us de novo. N.L.R.B. v. Camco, 5 Cir. 1966, 369 F.2d 125; N.L.R.B. v. O. A. Fuller Super Markets, Inc., 5 Cir. 1967, 374 F.2d 197. The Board's decision cannot be reversed for an alleged refusal to accept Trial Examiner credi-

bility choices where the Board merely draws a different inference than that drawn by the Trial Examiner from established facts. Southwire Company v. N.L.R.B., supra.

Applying these standards to the case at hand, we must first resolve the question of which Goodyear supervisor actually discharged Dobbs. Although Field Manager Tracy's consent was necessary before Dobbs could be fired, it is clear from Tracy's letter, supra, that he relied heavily upon unspecified information from Porter in authorizing the termination. The Board apparently concluded, and we agree, that the prime mover in Dobbs' discharge was Porter. Any examination of Goodyear's motive for discharge, therefore, must necessarily concentrate on Porter's reasons for firing Dobbs.

And at this point we are confronted with the most perplexing problem in this case—Porter never testified. The reasons for his failure to testify seem even more perplexing in view of the fact that Porter was present in the room at the hearing before the Trial Examiner. In any event, we must proceed without the benefit of testimony from the one person who was in the best position to testify under oath as to the actual motive for the employee's discharge.

An examination of the record reveals valid business reasons, i. e., the complaints from Greyhound, which could have prompted Porter to fire Dobbs. However, the record also reveals other facts from which an unlawful motive could be inferred. Porter indisputably threatened Dobbs and another employee with reprisals at the first mention of union representation. Dobbs was very active in attempting to secure a union for the Goodyear employees, and his discharge came less than two weeks after he had obtained authorization card signatures from a majority of his fellow employees. Field Manager Tracy admitted that Goodyear usually discussed Greyhound complaints with the particular employee involved in an effort to "get it straightened out," and, yet, Tracy equivocated and gave contradictory testimony when asked whether this procedure had been followed prior to the discharge of Dobbs.[2]

Contrary to the arguments of Goodyear, we find that the Board did not overturn credibility choices made by the Trial Examiner. While Tracy did testify that to his knowledge the discharge had nothing to do with union activity, Tracy was not the one who initiated the dismissal of Dobbs. Even accepting the truth of Tracy's statements, it was Porter who actually fired Dobbs and Porter did not testify. Thus, the Board's holding could have reversed credibility choices only if Porter had taken the witness stand and said that he was not motivated by Dobbs' protected activity in initiating the dismissal.

Under these circumstances we hold that the General Counsel met his burden of proving that the discharge of Dobbs was unlawfully motivated. Considering the record as a whole, there was substantial evidence before the Board to support its holding that Goodyear violated Section 8(a) (3) of the Act. Accordingly, the petition for enforcement is hereby

Granted.

2. Again, the testimony of Porter would have been most helpful since he was responsible for counseling employees before they were fired.