**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**WELLS FARGO ARMORED SERVICE CORPORATION OF PUERTO RICO, Respondent.**

**No. 78–1496.**

United States Court of Appeals, First Circuit.

Argued Feb. 8, 1979.

Decided April 26, 1979.

As Amended May 9, 1979.

Elliott Moore, Deputy Associate Gen. Counsel, with whom John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, and Robert E. Allen, Acting Associate Gen. Counsel, Washington, D. C., were on brief, for petitioner.

Vicente J. Antonetti, Santurce, P. R., with whom Goldman, Antonetti & Davila, Santurce, P. R., was on brief, for respondent.

Before CAMPBELL and BOWNES, Circuit Judges, JAMESON, District Judge.*

BOWNES, Circuit Judge.

This is an application of the National Labor Relations Board pursuant to section 10(e) of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, for enforcement of its order issued against Wells Fargo Armored Service Corporation of Puerto Rico for a violation of section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3).[1]

The claimed violation was for failure to rehire four economic strikers on the basis of their seniority: Rafael Rosado Soler, Ignacio Otero Rivera, William Martinez, and Jesus A. Duprey.

The parties see the basic issue differently. As posed by the Board, the question is whether the Board properly rejected, for failing to establish a legitimate and substantial business justification, the Company's reason for refusing to reinstate the four strikers. The Company denies that there was any 8(a)(3) violation on the basis that there was no proof of anti-union animus and that none could be inferred from its conduct.

*Of the District of Montana, sitting by designation.

## THE FACTS

On November 20, 1975, the Union which represented the armored car guards called a strike because its bargaining demands had not been met. The Union ended the strike on April 6, 1976, and the strikers made an unconditional offer to return to work. By this time, a number of the strikers, including the four implicated, had been permanently replaced. In August of 1976, the Company, on its own volition, formulated a list of all permanently replaced strikers in order of seniority. This list included the four alleged discriminatees, as well as thirteen others, most of whom had less seniority. A letter was sent to the replaced strikers informing them that they would be recalled in order of seniority when vacancies occurred or additional guards were needed. Enclosed with the letter was a questionnaire asking as to the striker's availability and interim employment status. All four complainants signified that they had been unemployed since the start of the strike and wished to return to work. Due to an increase in business during March of 1977, the Company decided to hire additional guards; letters and follow-up telegrams were sent to those on the seniority list asking them to report for interviews. It is a prerequisite for work as a security guard that the applicant have a gun permit. Under the laws of the Commonwealth of Puerto Rico, such permits are granted by the Superior Court and must be renewed annually. While the Company disputes the ALJ's statement that, "[i]n order to obtain such a license under those laws, an individual must actually be employed in a qualifying industry at the time of application," we assume, for the purpose of this opinion, that the ALJ was correct. As the interviews developed, it became apparent that misrepresentations had been made by many of the strikers to the Puerto Rico Superior Court as to their employment since the end of the strike in order for them to keep their gun permits during the time they were unemployed. As a result, several applicants were called back

1. The Board's decision and order is reported at 237 N.L.R.B. 98.

for a second interview and the Company did some investigating on its own.

When the interviews were completed, the Company informed the four that they would not be rehired because of misrepresentations made to the Superior Court in order to retain their gun permits.[2] The exact order of seniority of the four was: two, three, four, and fourteen. Those who were rehired had the following seniority: one, six, seven, eight, twelve, and thirteen. The Company's reason for not hiring any of the four was, in essence, that their misrepresentations were more flagrant and obvious than those made by the strikers it did rehire.

The ALJ spent considerable time analyzing the misrepresentations made by the nine strikers, found that "a half-truth should be no less 'obvious' than no truth at all," and held that the refusal to rehire the four was not justified by legitimate and substantial business considerations. On this basis, a finding of a violation of section 8(a)(3) of the Act was issued. Although not explicitly stated, the ALJ's finding must have been predicated on the belief that the Company had a duty to rehire strikers in strict order of seniority.[3]

This case is not to be decided on a balancing and evaluation of the different misrepresentations. Starkly put, the issue is: Did the Company have the right to pick and choose among liars in rehiring strikers?

The Board cavalierly assumes that this case falls easily within the holdings and reasoning of *N.L.R.B. v. Fleetwood Trailer Co., Inc.,* 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967), and the *Laidlaw Corp. v. N.L.R.B.,* 414 F.2d 99 (7th Cir. 1969), *cert. denied,* 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970). We do not agree that the case can be thus pigeonholed. In *Fleetwood,* the Company hired six new employees for jobs which the striker applicants

were qualified to fill. It was on these facts that the court held:

Section 2(3) of the Act (61 Stat. 137, 29 U.S.C. § 152(3)) provides that an individual whose work has ceased as a consequence of a labor dispute continues to be an employee if he has not obtained regular and substantially equivalent employment. If, after conclusion of the strike, the employer refuses to reinstate striking employees, the effect is to discourage employees from exercising their rights to organize and to strike guaranteed by §§ 7 and 13 of the Act (61 Stat. 140 and 151, 29 U.S.C. §§ 157 and 163). Under §§ 8(a)(1) and (3) (29 U.S.C. §§ 158(1) and (3)) it is an unfair labor practice to interfere with the exercise of these rights. Accordingly, unless the employer who refuses to reinstate strikers can show that his action was due to "legitimate and substantial business justifications," he is guilty of an unfair labor practice. *NLRB v. Great Dane Trailers,* 388 U.S. 26, 34 [87 S.Ct. 1792, 18 L.Ed.2d 1027] (1967). The burden of proving justification is on the employer. *Ibid.*

*Id.* 389 U.S. at 378, 88 S.Ct. at 545–546. *Laidlaw* applied the rule of *Fleetwood* to a situation where not one striker who was replaced was recalled despite the fact that fifty new employees were hired. There was also a prevailing atmosphere of anti-unions animus. We do not quarrel with the holding of either *Fleetwood* or *Laidlaw.* They simply do not apply to this case. Here, there was no hiring of new workers in place of the four alleged discriminates. Nor, as in *Laidlaw,* was there any expressed hostility to the Union. And we do not think that this is the type of conduct giving rise to an inference of anti-union animus. *See N.L.R.B. v. Erie Resistor Corp.,* 373 U.S. 221, 227, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963); *Teamsters Local v. N.L.R.B.,* 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961).

---

**2.** The following notice was sent to all four. "Our investigation reveals that the information contained in the documents, licenses and reemployment applications that you submitted had grave and serious discrepancies, errors and material inconsistencies. In view of this, we are sorry to inform you that your application for employment has been denied."

**3.** This means that only those holding the two, three, and four positions were entitled to be rehired over the others.

■ It is now well established that during a strike an employer can hire replacements for strikers and is under no duty to discharge them and rehire the strikers at the termination of the strike. *N.L.R.B. v. MacKay Radio & Telegraph Co.,* 304 U.S. 333, 345–46, 58 S.Ct. 904, 82 L.Ed. 1381 (1938). After the strike was over, the Company here followed the teaching of *Fleetwood* and *Laidlaw.* It formulated a seniority list, *sua sponte,* for the rehiring of strikers in the event job openings occurred. There is no suggestion that the Union precipitated or participated in the seniority listings. The words of the statute are specific. Section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), makes it an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment *to encourage or discourage membership in any labor organization*" (emphasis added). We fail to discern how this conduct in any way "encourag[ed] or discourag[ed] membership in any labor organization."

The language of § 8(a)(3) is not ambiguous. The unfair labor practice is for an employer to encourage or discourage membership by means of discrimination. Thus this section does not outlaw all encouragement or discouragement of membership in labor organizations; only such as is accomplished by discrimination is prohibited. Nor does this section outlaw discrimination in employment as such; only such discrimination as encourages or discourages membership in a labor organization is proscribed.

*Radio Officers Union v. N.L.R.B.,* 347 U.S. 17, 42–43, 74 S.Ct. 323, 337, 98 L.Ed. 455 (1954).

We agree with the ALJ that the fabrications and misrepresentations of each of the four would "amply justify the disqualification of these men from reemployment under Respondent's operating rules." Honesty and integrity are prime virtues in any job, but are to be especially looked for in men who have daily custody of large sums of money. Armored car robberies are now, unfortunately, becoming almost as commonplace as the stagecoach holdups that plagued Wells Fargo in its early days. "Any employer has the right to demand that its employees be honest and truthful in every facet of their employment. Absent an antiunion motivation, any employer has the right to discipline an employee for his dishonesty or untruthfulness." *N.L.R.B. v. Mueller Brass Co.,* 509 F.2d 704, 713 (5th Cir. 1975).

■ The Board's reasoning reduced to its essentials is that the Company would have been justified in not hiring any of the strikers who had resorted to misrepresentations in order to keep their gun permits, but, if it was going to rehire any, it had to follow the seniority list rigidly. We find no precedent for such a rule. Indeed, the only case that involves a similar situation is directly to the contrary. In *Kennedy & Cohen of Georgia, Inc.,* 218 N.L.R.B. 1175–76 (1975), the Board held:

> The Administrative Law Judge also seems to have believed that Respondent was obligated to reinstate strikers in the order of their applications for reinstatement regardless of whether they had been specifically replaced. There is no contention and no evidence that in designating particular strikers for replacement Respondent was discriminatorily motivated. The designations appear to have been made on a random basis. Accordingly, strikers who had been replaced were not entitled to reinstatement in preference to other strikers not replaced because of the former's earlier application for reinstatement.

It is accepted law that absent anti-union animus, an employee may be discharged for any reason. *N.L.R.B. v. Sutphin Co.-Atlanta, Inc,* 373 F.2d 890 (5th Cir. 1967). We have held in a series of cases that, in an 8(a)(1) discharge situation, "[t]he Board must find that anti-union animus was the dominant motive for the discharge and that it would not have taken place 'but for' such animus." *Hubbard Regional Hospital v. N.L.R.B.,* 579 F.2d 1251, 1255 (1st Cir. 1978). *See also Liberty Mutual Insurance Co. v. N.L.R.B.,* 592 F.2d 595 (1st Cir. 1979); *N.L.*

R.B. v. Rich's of Plymouth, 578 F.2d 880 (1st Cir. 1978); Coletti's Furniture, Inc. v. N.L.R.B., 550 F.2d 1292 (1st Cir. 1977); Stone & Webster Engineering Corp. v. N.L.R.B., 536 F.2d 461 (1st Cir. 1976); N.L.R.B. v. Fibers International Corp., 439 F.2d 1311 (1st Cir. 1971). The same test should be applied to rehiring strikers. If an employer is free to decide on the basis of his business judgment whom he can discharge, he should have the same freedom in rehiring strikers.

The basic determination here, then, is whether or not anti-union animus was the motive for the failure to rehire the four. As we have pointed out earlier, there is no evidence of such animus nor can one be inferred. The ALJ and the Board simply decided that it would be fairer under the circumstances, to stick to the seniority list. That is an arrogation of power that they are not authorized under the Act or the cases to exercise. The Company here made a reasoned judgment that the misrepresentations of the four in question were more egregious than those who were rehired. This was a decision that the Company was entitled to make and, so long as there was no anti-union motive involved, the Board cannot substitute its own reasoning for it. As we have emphasized in our past decisions, " ' "[t]he Act was not intended to guarantee that business decisions be *sound*, only that they not be the product of anti-union motivation (emphasis in original)." ' NLRB v. Rich's of Plymouth, Inc., supra, 578 F.2d at 887 n.9, quoting from Stone & Webster Engineering Corp. v. NLRB, supra, 536 F.2d at 467." Liberty Mutual Insurance Co. v. N.L.R.B., supra, at 603.

We find that there was no 8(a)(3) violation. This finding makes it unnecessary to consider the scope of the cease and desist order.

*The petition for enforcement of the Board's order is denied.*