NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

RIDGEWAY TRUCKING COMPANY,
Respondent.

No. 80–5014
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Norman F. Burke, Orlando, Fla., for respondent.

Before HILL, GARZA and THOMAS A. CLARK, Circuit Judges.

PER CURIAM:

In this action, the National Labor Relations Board requests that the court enter a judgment enforcing the Board's order. The Board, which overturned the findings of an Administrative Law Judge [ALJ], ruled that the respondent Ridgeway had engaged in unfair labor practices in violation of 29 U.S.C. § 158(a)(1). Finding substantial evidence in the record as a whole to support the Board's decision, enforcement is granted.

The undisputed facts, those accepted as credible by the ALJ, show that Ridgeway is engaged in the transporting of building materials. On the morning of Tuesday, June 18, 1977, Ridgeway chief dispatcher Horace Shepherd arrived at work to find that the company's commission drivers were waiting outside the gate and refusing to go to work until they could talk to someone about their pay rates. About an hour later, the drivers spoke with the service manager, Harvey Cobb, in his office. The drivers explained their problem to Cobb who told them that he would discuss it with the General Manager Kenneth Surbaugh. When Surbaugh arrived a short while later, Shepherd informed him of the situation. Surbaugh walked over to Cobb's office but refused to talk with the drivers as a group. He stated that he would talk with them individually, but the drivers refused this offer.

Some of the drivers then went to the garage area to stand by the heater. Shortly thereafter, Surbaugh walked out of his office and went into the garage area. Surbaugh told the drivers that if they were not going to go to work they should leave the property. Surbaugh informed them that if they did not leave the premises, he would have to call the authorities. At this point, one or more drivers asked Surbaugh when they would receive their paychecks. He told them that they could not be paid until someone came in to sign their checks.

Some drivers also asked Surbaugh if they could remove their personal belongings from the trucks, which he allowed. Joseph Egan, an attorney, testified that either the day of or the day after this incident, ten or twelve drivers related their complaints to him about the treatment by Surbaugh. The present application for enforcement, however, involves only three employees: Kenneth Bryant, Andy Griffin and Coleman Peterson.

Griffin and Peterson testified that Surbaugh had told them that they were "fired" and that he had used abusive language. The ALJ did not credit these assertions, however. Further, the Board did not refute the ALJ's finding on this matter. Having reviewed the record, this court agrees that the overwhelming weight of the testimony tends to negate any indication that Surbaugh used abusive language or the word "fired." Nonetheless, the Board found, and we agree, that the effect of Surbaugh's statements was to discharge the three employees involved in this action.

An employer may discharge an employee for good cause, bad cause or no cause, provided that it was not done with a motive to squelch a protected labor activity.

*See Syncro Corp. v. N. L. R. B.*, 597 F.2d 922, 924 (5th Cir. 1979). It is undisputed that the drivers were engaged in a concerted activity protected by the National Labor Relations Act. *See United Merchants and Manufacturers, Inc. v. N. L. R. B.*, 554 F.2d 1276, 1278 (4th Cir. 1977) (temporary work stoppage is protected by the Act as a concerted activity). It is also clear that the departure of the employees was based upon their participation in the work stoppage. Thus, the only issue is whether the actions of Surbaugh amounted to a discharge. An employer need not use the term "fired" in order for a discharge to occur. The test of whether an employee was discharged depends upon the reasonable inferences that the employees could draw from the language used by the employer. *Liberty Mutual Insurance Co. v. N. L. R. B.*, 592 F.2d 595, 604 (1st Cir. 1979); *The C. J. Krehbiel Company*, 227 N.L.R.B. 383, 384 (1976).

In the present case, the evidence demonstrates that the employees considered themselves discharged. Their requests for paychecks and for removal of their belongings from the trucks indicate that the employees were under the impression that their services were no longer required by Ridgeway. Additionally, their visit with an attorney shortly after the incident indicates that the drivers felt that they had been treated unfairly and illegally. A similar situation occurred in *Hale Manufacturing Co., Inc.*, 228 N.L.R.B. 10 (1977), *enforced*, 570 F.2d 705 (8th Cir. 1978), where the employees requested a pay raise. The employer told them that he could not pay it and that they would all have to go home. In *Hale*, one employee had asked his employer whether he needed 13 cents to mail his paycheck, and the employer told him that he could handle that. These facts were sufficient to find a constructive discharge by the employer. *Id.* at 13. The Board in that case stated that if the employer had not considered the employee as fired, he would have inquired about the employee's intent to quit following his question about the 13 cent stamp. *Id.* Similarly, if Surbaugh had truly believed that the employees were quitting, he reasonably should have questioned them further about their intent.

 The court realizes that when the Board does not accept the findings of an ALJ, the evidence and the findings of the Board must be examined more critically than if the two had been in agreement. *See Syncro Corp.*, 597 F.2d at 924–925. Nonetheless, when the Board reaches a different conclusion, its findings must be sustained if the record, taken as a whole, shows substantial evidence to support those findings. *Syncro Corp.*, 597 F.2d at 925; *Russell-Newman Manufacturing Co. v. N. L. R. B.*, 407 F.2d 247, 249 (5th Cir. 1969). This is not a case where the Board has rejected credibility determinations made by the ALJ. *See, e. g., Syncro Corp.*, 597 F.2d at 925 (when Board makes a contrary credibility choice, the superior advantage of the ALJ in this area should be weighed as a factor in determining the substantial evidence question); *Delchamps, Inc. v. N. L. R. B.*, 588 F.2d 476, 480 (5th Cir. 1979) (Board may only refute undisputed testimony when it conflicts with well supported or obvious inferences from the remainder of the record); *Ward v. N. L. R. B.*, 462 F.2d 8, 12 (5th Cir. 1972) (when ultimate determination of motive or purpose hinges entirely upon the credibility determination of the trial examiner, those findings are entitled to special weight and are not to be easily ignored); *Russell-Newman Manufacturing Co.*, 407 F.2d at 249 (Board need not follow credibility findings of ALJ when they conflict with well supported inferences drawn from other portions of the record).

 In the present case, the ALJ refused to credit the testimony of two of the employees who accused Surbaugh of specifically firing them. The Board, however, did not refute that finding and did not accept those witnesses' credibility either. Rather, the Board reached its conclusion from the remainder of the record, relying upon the facts accepted as credible by the ALJ. The

Board's decision cannot be reversed when it merely draws a different inference than that drawn by the ALJ from established facts, provided there is substantial evidence. *See Goodyear Tire and Rubber Co. v. N. L. R. B.*, 456 F.2d 465, 467–68 (5th Cir. 1972). Having reviewed the entire record, the court concludes that there is substantial evidence to support the findings of the Board that Ridgeway did discharge the employees, which action amounted to an unfair labor practice due to the latter's participation in a legal work stoppage.

The decision of the Board is ENFORCED.