**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LANCER CORPORATION, Respondent.**

**No. 84–4704**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

May 2, 1985.

Elliott Moore, Margaret Bezou, Deputy Assoc. Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

Ben F. Foster, Jr., San Antonio, Tex., for Lancer Corp.

Louis V. Baldovin, Jr., Dir., Reg. 23, N.L.R.B., Houston, Tex., for other interested parties.

Before RUBIN, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

The National Labor Relations Board applies for enforcement of its order of August 31, 1984, 271 NLRB No. 228. By this order, the decision of the Administrative Law Judge (ALJ) was affirmed in most respects. The ALJ's decision had held that the employer ("Lancer") had engaged in certain unfair labor practices in connection with a union representational election, but it also rejected the union's charges that three employees had been discharged (including, pertinently, Pfeiffer) and one suspended for pro-union activity, in violation of the National Labor Relations Act. As to one of the discharged employees, Pfeiffer, the Board—without disturbing the ALJ's credibility evaluations—held that, under its evaluation of the evidence, Lancer's reason for discharge of Pfeiffer was pretextual and was, in fact, solely motivated by its knowledge of Pfeiffer's union activity, coupled with its attempts to thwart unionization.

In opposing enforcement, the employer Lancer questions only the Board ruling holding that Pfeiffer's discharge was unlawful. Lancer alleges that the Board erred (a) in failing to accord weight to the ALJ's finding that Pfeiffer would have been terminated absent his protected activities, (b) in substituting its own judgment for the business judgment of the employer, and (c) in failing to accept the findings of fact of the ALJ.

■ We find no merit to Lancer's contentions. However artfully phrased, essentially they attack the Board's ruling as not founded on substantial evidence. Finding that substantial evidence supports the Board's findings of anti-union animus as the sole motivation of Pfeiffer's discharge, we affirm this administrative determination. *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951); *National Labor Relations Board v. Gulf States United Telephone Company*, 694 F.2d 92, 95 (5th Cir.1982).

Pfeiffer's discharge allegedly was based on Pfeiffer's absence from work on August 30, 1982, for a premarital examination. He had worked for the company for a year and a half at that time, so therefore he was eligible for five working days of paid sick leave. On the workday preceding August 30, Pfeiffer had informed his supervisor (Rodriguez) that he had a doctor's appointment for a blood test on August 30, and that he would be absent the entire day. Rodriguez assented, but informed Pfeiffer to bring in a doctor's excuse when he returned. Pfeiffer returned to work on August 31 with the doctor's certificate. Rodriguez then filled out an absence report showing that the absence was "excused" and that the reason for it was a "blood test," attaching the doctor's certificate.

The doctor's certificate stated that Pfeiffer was able to return to work on August *30* (the day of the examination). Noting this discrepancy and that Pfeiffer did not return to work until the following day, August 31, Lancer's Employment Relations Manager (Smith) called the doctor and found that the appointment had been for 11:30 A.M. Smith did not check with Rodriguez, the supervisor who had approved Pfeiffer's absence, nor did she ask the doctor's office at what time Pfeiffer had left the office after the examination on the 11:30 A.M. appointment was completed. Instead, as Smith admitted, she decided that Pfeiffer, a pro-union activist, should be dismissed for his alleged fraudulent attempt to seek sick pay.[1]

Smith summoned Pfeiffer to her office to inform him of her decision, stating to him that she wished to question him. He refused to answer, because he wanted his own witnesses present. Upon Pfeiffer's refusal, Smith wrote out his discharge papers.

The Board found that Smith's decision to terminate Pfeiffer, based on perfunctory investigation and without any attempt at meaningful inquiry—such as consulting with the supervisor Rodriguez (who had excused the absence) or finding out from the doctor how much of the work-day was left after the visit to the doctor's office was concluded—indicated a discriminatory motivation. The Board found this to be particularly suspicious in the light of the employer's policy of allowing two days of sick leave without medical documentation, to which Pfeiffer was clearly entitled for the August 30 absence through his prior notice to Rodriguez.

The Board concluded:

> The Respondent's [Lancer] perfunctory investigation of Pfeiffer's claim for sick leave and its failure to consult his super-

---

1. Under the company's policy, an employee of Pfeiffer's tenure was entitled to five days of paid sick leave, two of which upon 24-hours' prior notice (such as was here given by Pfeiffer to his supervisor Rodriguez) could be used by the employee at his own discretion without medical documentation. In filling in the absence report, the supervisor Rodriguez did not check whether or not the sick leave was granted under this employee discretionary rule. Smith's apparent theory was that Pfeiffer was trying to use doctor-excused absence fraudulently instead of using his discretionary undocumented sick leave.

visor, coupled with the Respondent's knowledge of Pfeiffer's union activity and its attempts to thwart unionization by such unlawful acts as more strictly enforcing its work rules, compel the finding that it used the discrepancy between the doctor's note and the absence report as an excuse to rid itself of the union adherent. Thus, the Respondent's decision to discharge Pfeiffer before its interview with him and in the absence of a full investigation demonstrates that Pfeiffer's failure at the interview or otherwise, to refute the Respondent's claim that he attempted to misuse sick leave played no part in the Respondent's decision to discharge him. The evidence similarly establishes that the Respondent did not rely on any alleged misconduct by Pfeiffer in deciding to discharge him. It is consequently clear from the record that the Respondent must have relied solely on Pfeiffer's union activity in deciding to discharge him. Accordingly, we find that the Respondent violated Section 8(a)(3) and (1) of the Act by discharging Charles Pfeiffer on 31 August 1982.

In all material aspects, the ALJ had made the same factual findings as those upon which the Board's conclusion was based. However, the ALJ concluded that, on the basis of appearances to Smith at the time she determined to discharge Pfeiffer, Smith may have had reason to believe that a claim for fraudulent sick leave had been presented, a clear basis for discharge; and that, although the anti-union animus of the employer Lancer established a prima facie violation of the Act in Pfeiffer's discharge, nevertheless "Pfeiffer's refusal to answer questions of Smith regarding the absence and the doctor's excuse preclude me from concluding that he would not have been discharged but for his union activities."

Essentially, then, the ALJ weighed the evidence differently than did the Board, which—without disturbing the ALJ's credibility evaluations—found discriminatory motive in the discharge based upon reasonable inferences from substantial record evidence. Although the Board's overall judgment differed from that of the ALJ as to the proper inferences to be drawn from the largely undisputed evidence concerning the salient ultimate fact, on judicial review the issue is, nevertheless, whether the Board's ultimate determination is supported by substantial evidence in the record as a whole, not whether the ALJ's noncredibility-based inferences might be considered by the reviewing court equally as reasonable as the Board's. *Universal Camera Corp. v. National Labor Relations Board, supra,* 340 U.S. at 496–97, 71 S.Ct. at 468–69; *National Labor Relations Board v. Rolligon Corporation,* 702 F.2d 589, 592 & n. 3 (5th Cir.1983); *National Labor Relations Board v. Ridgeway Trucking Company,* 622 F.2d 1222, 1224 (5th Cir.1980); *Syncro Corporation v. National Labor Relations Board,* 597 F.2d 922, 924–25 (5th Cir.1979); *Seminole Asphalt Refining, Inc. v. National Labor Relations Board,* 497 F.2d 247, 249 & n. 5 (5th Cir.1974); *Ward v. National Labor Relations Board,* 462 F.2d 8, 12 & n. 5 (5th Cir.1972).

Finding that substantial evidence supports the decision of the Board, its order is

ENFORCED.