**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KDFW–TV, INC., a DIVISION OF TIMES MIRROR CORPORATION, Respondent.**

No. 85–4443.

United States Court of Appeals, Fifth Circuit.

June 6, 1986.

---

William L. Keller, Clark, West, Keller, Butler & Ellis, Michael P. Maslanka, Dallas, Tex., for respondent.

Michael Dunn, Director, N.L.R.B., Fort Worth, Tex., for other interested parties.

Before WISDOM, REAVLEY, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

The National Labor Relations Board ("Board") has applied to this Court for enforcement of an unfair labor practice order issued by the Board against KDFW–TV, Inc. The sole issue raised by the Board's application is whether certain KDFW employees are "supervisors" within section 2(11) of the National Labor Relations Act ("Act") and thus exempt from inclusion in a collective bargaining unit. The Board found that they are not supervisors. We conclude that substantial evidence exists to support the Board's findings. The unfair labor practice order issued by the Board is therefore enforced.

## I. BACKGROUND

KDFW is a network affiliated television station broadcasting in the Dallas/Fort Worth area. The station carries network television programs and produces live newscasts. These newscasts are presented five times daily during the week and twice on Saturday and Sunday respectively. Production of live news broadcasts at KDFW is the responsibility of both the News and Programming Departments.

The News Department which consists of eighty-one employees is principally responsible for gathering and developing news events for live and taped broadcasts. The News Department is headed by a news director. The Department employs four producers and one associate producer. Each producer reports directly to an executive producer who in turn reports to the

Judith A. Dowd, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

news director. The News Department also employs three assignment editors who report to a coverage manager.

The Programming Department is principally concerned with the technical aspects of producing telecasts. The Programming Department is headed by a production director. The Programming Department employs five directors. Each director reports to the production manager who in turn reports to the production director. The heads of these two departments, the news director and production director, each report directly to the general manager of KDFW.

On March 14, 1984, the American Federation of Television and Radio Artists (AFTRA) filed a representation petition with the Board's Fort Worth Regional Office. In its petition, AFTRA sought certification as the bargaining representative of a unit of KDFW employees which included, in part, directors, producers, assignment editors, and associate producers.

On April 3, 1984, the Board conducted a hearing concerning the composition of an appropriate bargaining unit. KDFW insisted that producers, directors, assignment editors and associate producers were supervisors, hence exempt from inclusion in any bargaining unit under section 2(11) of the Act. On April 20, 1984, the Regional Director issued a decision and direction of election in which he ruled that the above KDFW employees are not supervisors. KDFW appealed the Regional Director's decision to the Board. On July 11, 1984, the Board denied KDFW's request for review.

Meanwhile, the election directed by the Regional Director was held. A majority of votes from the bargaining unit favored AFTRA and on July 24, 1984, the Regional Director certified AFTRA as the exclusive bargaining representative of a unit of KDFW employees which included KDFW

directors, producers, assignment editors and associate producers in addition to a number of other KDFW job classifications. Thereafter, KDFW refused to either bargain with AFTRA or to furnish AFTRA with information concerning employees in the bargaining unit.

Consequently, on September 4, 1984, an unfair labor practice charge was filed against KDFW. In response, the Board issued a decision and order holding KDFW guilty of violating section 8(a)(5) and (1) of the Act.[1] The Board now seeks this Court's enforcement of that order. KDFW, in turn, seeks to overturn the Board's determination that KDFW's directors, producers, associate producers, and assignment editors are not supervisory personnel.

## II. DISCUSSION

At the outset, we note that a reviewing court should pay substantial deference to the Board's "special function of applying the general provisions of the Act to the complexities of industrial life." *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1150, 10 L.Ed.2d 308 (1963). Particular deference must be given to the Board's findings concerning "the aging but nevertheless persistently vexing problem of whether or not an employee is a supervisor" under section 2(11) of the Act. *NLRB v. Security Guard Service, Inc.*, 384 F.2d 143, 145 (5th Cir.1967). This deference is necessary because of the infinite and subtle gradations of authority which determine who, as a practical matter, falls within the statutory definition of "supervisor." *GAF Corp. v. NLRB*, 524 F.2d 492, 494 (5th Cir.1975) (*quoting NLRB v. Swift & Co.*, 292 F.2d 561, 563 (1st Cir. 1961)). Consequently, this Circuit has repeatedly declined to merely second-guess the Board concerning an employee's status under section 2(11). *See, e.g., NLRB v. San Antonio Portland Cement Co.*, 611

---

**1.** Section 8(a)(5) provides that it shall be an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees...." 29 U.S.C. § 158(a)(5). Section 8(a)(1) provides that it shall be an un-

fair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this Title...." 29 U.S.C. § 158(a)(1).

F.2d 1148 (5th Cir.), *cert. denied,* 449 U.S. 844, 101 S.Ct. 127, 66 L.Ed.2d 53 (1980); *NLRB v. Houston Natural Gas Corp.,* 478 F.2d 467 (5th Cir.), *cert. denied,* 414 U.S. 1067, 94 S.Ct. 575, 38 L.Ed.2d 472 (1973). The Board's determination regarding supervisory status must be upheld if supported by "substantial evidence" on the record as a whole, and if the Board's application of the statutory definition of supervisor has a reasonable basis in law. *GAF Corp. v. NLRB,* 524 F.2d 492, 495 (5th Cir.1975).

■ Supervisors are excluded from the Act's coverage by 29 U.S.C. § 152(3). In excluding supervisors, Congress sought to distinguish management personnel from protected employees. This distinction was thought necessary to avoid the possibility that fraternal union feelings would tend to impair a supervisor's ability to apply his employer's policy to subordinates according to the employer's best interests. *See Beasley v. Food Fair of North Carolina,* 416 U.S. 653, 660, 94 S.Ct. 2023, 2027, 40 L.Ed.2d 443 (1974) (discussing the legislative history of the 1947 Taft-Hartley amendments to the Act). Section 2(11) of the Act defines "supervisor" as:

> [A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). Section 2(11) is to be read in the disjunctive, with the existence of any one of the statutory powers sufficient to confer supervisory status. Section 2(11) also requires, however, that a "supervisor" must exercise independent judgment "with respect to one of the enumerated functions under the statute, and not with respect of some other aspect of the individual's work." *NLRB v. Harmon Indus-*

*tries, Inc.,* 565 F.2d 1047, 1049 (8th Cir. 1977).

■ The record supports the Board's determination that KDFW directors, producers, associate producers and assignment editors lack authority over personnel matters including hiring, firing, evaluation, and discipline of employees. KDFW contends, however, that each of the four disputed job classifications has authority to "responsibly direct" and "assign" other employees and must exercise "independent judgment" in doing so.

The record clearly indicates that producers, associate producers, directors and assignment editors "direct" other employees. Each of the four KDFW news producers is assigned to produce a specific newscast program each day. The producer who is responsible for the content of a given newscast, prepares a "format" for each newscast listing the stories to be covered and their order of presentation. The producer is required to coordinate and direct the activities of a number of skilled personnel including reporters, photographers, writers, anchors and editors.

The associate producer's function is similar to, although separate from, the producer's. The associate producer is responsible for graphics, visuals, and setting up "live remotes." In carrying out these responsibilities, the associate producer is required to coordinate and direct the activities of a number of technical personnel including telemation operators and members of "remote crews." The associate producer is also required to act as producer in a producer's absence.

In contrast to producers, the five KDFW directors are not responsible for the content of the newscast, but rather the manner in which it is presented. The directors serve as "conductors" who "orchestrate the execution" of the program. Record Vol. II at 77. The directors coordinate and instruct a technical crew which includes camera operators, a stage manager and various engineers and technicians.

The three assignment editors work under the direction of a coverage manager. The

coverage manager ordinarily makes out a roster of stories and a preliminary assignment sheet. The assignment editors relay these assignments to reporters and photographers. The assignment editor can change an assignment, although he or she usually consults the coverage manager before making a change.

While each of the disputed classifications is clearly authorized to direct co-workers, for that direction to be supervisory under the Act it must be "responsible." "To be responsible is to be answerable for the discharge of a duty or obligation." *Marine Yankee Atomic, etc. v. NLRB*, 624 F.2d 347, 361 (1st Cir.1980) (*quoting Ohio Power Co. v. NLRB*, 176 F.2d 385, 387 (6th Cir.), *cert. denied*, 338 U.S. 899, 70 S.Ct. 249, 94 L.Ed. 553 (1949)); *see also Kaiser Engineers v. NLRB*, 538 F.2d 1379, 1383 (9th Cir.1976); *NLRB v. Fullerton Publishing Co.*, 283 F.2d 545 (9th Cir.1960). In determining whether "direction" in any particular case is responsible, the focus is on whether the alleged supervisor is "held fully accountable and responsible for the performance and work product of the employees" he directs. *Marine Yankee*, 624 F.2d at 361. Thus, in *NLRB v. Adam & Eve Cosmetics, Inc.*, 567 F.2d 723, 727 (7th Cir.1977), for example, the court reversed a Board finding that an employee lacked supervisory status after finding that the employee had been reprimanded for the performance of others in his department.

In the instant case, the Regional Director found that KDFW directors, producers, associate producers, and assignment editors do not "responsibly direct" other employees. After carefully reviewing the record, we conclude that this finding is supported by substantial evidence in the record. The Regional Director could have reasonably concluded that the disputed classifications "do not function as supervisors, but are part of an integrated production team, each member of which is independently capable of executing his assignment." *Westinghouse Broadcasting Inc.*, 215 N.L.R.B. 123 (1974) (concluding

that television station director/producers in that case were not "supervisors").

No evidence in the record suggests that producers, directors, or assignment editors are responsible for the performance of the skilled technicians and professionals they direct. Both producers and associate producers are responsible only for their own performance in planning a particular broadcast and in coordinating the efforts of other workers to produce a quality broadcast. Unlike the producers found to be supervisors in *Hearst Broadcasting Co.*, 267 N.L.R.B. 326, 327 (1983), the KDFW producers have no role in hiring, evaluating, and reprimanding the employees they direct. Moreover, unlike the producers in *Hearst*, there is evidence that KDFW producers are not told they are supervisors nor are their co-workers so informed. *See Westinghouse Broadcasting Co., Inc. v. NLRB*, 503 F.2d 1055 (2d Cir.1974) (affirming Board finding that television producer-directors are not supervisors).

Similarly, substantial evidence supports the Board's conclusion that KDFW directors are not supervisors. "The direction and issuance of stage instructions [by directors] is not a reflection of supervisory authority to responsibly direct other employees." *Westinghouse Broadcasting Co.*, 216 N.L.R.B. 327, 329 (1975). Such directions are routine technical or aesthetically motivated commands executed by technical personnel already acquainted with the production plan. *Id.* The directors do not participate in hiring, evaluating, assigning, rewarding or reprimanding these technicians and are not responsible for the technician's performances. *Compare WTAR Radio-TV Corp.*, 168 N.L.R.B. 976, 978 (1967). Rather, the record suggests that KDFW directors are responsible only for their own performance in orchestrating a particular broadcast. *See Meredith Corp. v. NLRB*, 679 F.2d 1332, 1342 (10th Cir. 1982) (findings that television directors, both in commercial and newscast production, were not supervisors supported by substantial evidence); *see also Taft Broadcasting Co.*, 226 N.L.R.B. 540 (1976) (tele-

vision director's authority and direction of employees was more artistic than supervisory); *Golden West Broadcasters*, 215 N.L.R.B. 760 (1974) (staff directors at a television station were not supervisors but rather functioned as part of an integrated production team).

Finally, the Regional Director could have properly found that the assignment editors are not supervisors but rather serve primarily as a conduit for those decisions already made by the coverage manager. To the extent the assignment editor is required to change an existing assignment, the editor ordinarily attempts to consult with the coverage manager. When the coverage manager is unavailable, the assignment editor will make assignments. However, those assignments can be subsequently overruled by the coverage manager. Those assignments made by the assignment editors are generally routine and based on the availability of personnel. Moreover, unlike the assignment editors found to be supervisors in *Taft Broadcasting Company*, 226 N.L.R.B. 540 (1976), the KDFW assignment editors lack authority to effectively evaluate and discharge co-workers. *See American Federation of Television and Radio Artists v. Storer Broadcasting*, 745 F.2d 392, 397 (6th Cir. 1984) (substantial evidence supported determination that assignment editors were not supervisors).

KDFW contends that the Board's decision effectively means that the station is unsupervised during the evenings and weekends since directors, producers and assignment editors are the highest ranking employees on duty during those periods. KDFW concludes that such a result is unacceptable and that the Board therefore erred in holding that these employees are not supervisors. We disagree. Evidence in the record indicates that both the news director and program director are generally available for consultation on the weekends and in the evenings. Moreover, many decisions regarding the after hours operation of the station are made during the weekdays. Finally, we note that the Board could reasonably conclude that the highly skilled technical personnel employed by KDFW do not require constant or close supervision. *See Westinghouse Broadcasting Co.*, 215 N.L.R.B. 123 (1974).

### III. CONCLUSION

For the foregoing reasons, we conclude that substantial evidence supports the Board's conclusion that KDFW producers, associate producers, assignment editors, and directors are not supervisors under section 2(11) of the Act. The unfair labor practice order issued by the Board is therefore enforced.