United States Court of Appeals,

Fifth Circuit.

No. 92-5175.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

ADCO ELECTRIC INCORPORATED, Respondent.

Nov. 17, 1993.

Application for Enforcement of an Order of the National Labor Relations Board.

Before POLITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge, and DAVIDSON,[1] District Judge.

DAVIDSON, District Judge:

This case is before the court on application of the National Labor Relations Board ("NLRB" or "Board") for enforcement of its order against Adco Electric, Inc., ("Adco"). The NLRB's order was issued on June 30, 1992. The Board's jurisdiction arises under section 10(a) of the National Labor Relations Act ("the Act"), which empowers the NLRB to prevent unfair labor practices. This court's jurisdiction for the application of enforcement arises under section 10(e) of the Act, 29 U.S.C. § 160(e). Following oral argument in this cause, and a review of the record and briefs submitted by the parties, we enter judgment enforcing the NLRB's order. Before examining the specific issues which we are called upon to consider today, it is appropriate to present a little background information which has brought us this far.

*I. Background*

Adco Electric is an electrical contractor based in Jackson, Mississippi. The company employs both "inside" (service electricians) and "outside" (construction) electricians. Adco's outside personnel are under the direction of general superintendent, William Richard Buie, who reports directly to the company president, Whit Adams. Job foremen are journeyman electricians that Adco retains on the payroll in layoff preference to journeyman electricians (who are not foremen). Apprentice electricians, or helpers, are the lowest in seniority. The layoff and retention policy helps explain that

---

[1]District Judge of the Northern District of Mississippi, sitting by designation.

for the summer of 1990, the total outside construction workforce consisted of approximately twenty people, with six to eight electricians classified as foremen.

Adco is adamantly anti-union. The employee handbook clearly explains the company's position on unionized shops:

### 5. A FEW WORDS ABOUT UNIONS

There is always a chance that in the future a labor union organizer will try to persuade some of our employees to sign union authorization cards. For this reason, it is important that you understand our position concerning unions.

To say it simply and clearly, although you have the legal right to join a labor union, you also have the legal right NOT to join a labor union. We prefer to work with our employees informally, personally, and directly, rather than through third party outsiders intervening between us. We think you agree. So we will make every effort that is legally permissible to retain our status as an ABC Merit Shop, NON-union contractor.

We have the ability, the desire, the expertise, and the personnel to solve our problems and move forward by working together in the Merit Shop Way—without interference from union outsiders. Based on these facts, we believe a labor union is unnecessary and unwanted here at Adco Electric, Inc.

On July 24, 1990, Eric Muncy interviewed for an apprentice job with Mr. Buie. Superintendent Buie noted on the job application that Muncy had worked for an Adco competitor, Thompkins Electric, a union contractor. Buie asked Muncy what his feelings were about unions, and Muncy responded that he did not "have anything for them or against them." Buie then asked Muncy if he was a union member. Muncy responded that he was not, and he was hired at the conclusion of the interview.

The next month, August 1990, the International Brotherhood of Electrical Workers, Local 480, began an active organizing campaign among Adco's employees. A union representative made first contact with Raymond Langford, a foreman who had been with Adco for one year. Following a few telephone calls and a meeting with the union representative, Langford spoke with other Adco employees about the union benefits. A few days later, a group of Adco employees, including Langford and Muncy, attended a meeting at the union hall where the employees signed union authorization cards. At a second meeting, attended by five or six employees, they agreed to start wearing union caps and promotional badges beginning at break time the following day. The next day, August 14th, the employees went forward with their plans, and Superintendent Buie noticed the union

promotional campaign. Also on this same day, three union representatives hand delivered a letter to Adco informing the company that the union and Adco employees were engaging in organizing activity. The letter also listed nine employees who "wished to be identified as members of the organizing committee." The list included the names of Raymond Langford and Eric Muncy along with LaFrance Smith, Jeffrey Calender, David Lewis, Eric Lott, John Newell, Orby Renfroe and Cory Williams.

Three days later, on August 17, 1990, Superintendent Buie fired Raymond Langford. Langford's termination slip stated that he was fired "for solicitation." On August 27th, the union filed an election petition with the NLRB seeking to represent all employees of Adco doing electrical work. On October 31, 1990, the regional director issued a decision directing an election in a unit of Adco's electricians and electrical apprentices. The unit excluded job foremen whom the regional director found, as a group, to be supervisors under the Act. On March 22, 1991, the NLRB denied Adco's request for review of the direction of election. However, no election has been held due to events subsequent to the firing of Raymond Langford and pending charges of unfair labor practices at Adco.

During the week of September 10, 1990, Superintendent Buie informed Eric Lott, who was filling in as job foreman, that his crew was need to work overtime on Saturday, September 15th. Buie explained that Adco's client, McCarty Foods, would halt production on that day allowing electrical work to be performed. Eric Lott passed this information on to Eric Muncy and Cory Williams. However, both Muncy and Williams informed Lott that they had made weekend plans and could not work on Saturday. On Friday, September 14th, Buie visited the job site to deliver paychecks. When Buie asked Eric Lott if everyone would be working on Saturday, Lott related to Buie that Muncy and Williams had other plans for the weekend. Buie then instructed Lott to tell Muncy and Williams to "be here." The weekend passed, and neither Eric Muncy nor Cory Williams reported to the job on Saturday. Additionally, Lott allowed Muncy and Williams to leave work on Friday between 3:00 and 3:30 p.m., although Lott logged on the time sheets that the crew left at the regular quitting time, 3:30 p.m. On Monday morning, Superintendent Buie fired Cory Williams and Eric Muncy. Williams was told that he was fired for "cussing on the job," and Muncy's termination notice stated that he was fired

for missing work on Saturday and for lying about when he left work on Friday.[2]

Another "incident" occurred on November 15, 1990. While at the McCarty Foods job site, Eric Lott had a conversation with Adco president, Whit Adams. Eric Lott suggested to Adams that the company could procure bigger jobs if Adco went union. Adams responded that he did not want to go union and that the best thing for Lott to do, if he wanted a union, was to quit his job and "go union." During the same conversation, Lott brought up the issue of a pay raise. Adams responded that he could not give a raise at that time "because of the cost of the union movement."

The original charges in this case were filed by the Local Union 480, on August 24, 1990, September 24, 1990, September 26, 1990 and November 23, 1990. On January 30, 1991, an amended charge was filed which incorporated some of the allegations contained in prior charges, along with some additional allegations. The complaints were as follows: (1.) alleged unlawful interrogation of Eric Muncy by Superintendent Buie in the July 1990, job interview; (2.) alleged unlawful termination of Raymond Langford on August 17, 1990; (3.) alleged unlawful termination of probationary apprentice, Eric Muncy, on September 17, 1990; (4.) alleged promulgation and enforcement of an unlawful rule prohibiting employees from discussing the union; and (5.) an alleged unlawful statement by company president, Whit Adams, that he could not grant a raise because of the union movement.

The case was heard by an Administrative Law Judge ("ALJ") in Jackson, Mississippi, on June 24 and 25, 1991. On October 4, 1991, the ALJ issued his decision in which he found against the company on all issues, with the exception of the alleged promulgation and enforcement of a rule prohibiting employees from discussing the union. The ALJ's order contained cease and desist directives regarding; (1.) coercive interrogation of any employee or job applicant about union support; (2.) threatening employees that pay raises were not possible because of union organizing activity; and, (3.) discharging or otherwise discriminating against any employee for supporting Local 480 or any other union. With regard to former employees Langford and Muncy, Adco was ordered

---

[2]Buie visited the job site at 3:05 p.m. on Friday and found no one there. On Monday, Buie asked Muncy what time he had left work on Friday, and Muncy replied 3:30 p.m.

to reinstate both employees with back pay, without loss of seniority, and with no adverse entry in their personnel files. Adco filed timely objections with the NLRB. On June 30, 1992, the NLRB issued its decision and order wherein it adopted the ALJ's order. Thereafter, the NLRB filed with this court an application for enforcement of its June 30, 1992, order.

There are four issues into which the court's attention is invited which are implicit in the NLRB's application for enforcement. The first issue relates to a failed offer of proof and quash of a subpoena duces tecum wherein Adco attempted to introduce evidence before the ALJ and the NLRB with regard to a job targeting program sponsored by Local 480. Simply put, Adco unsuccessfully sought to present evidence that Local Union 480's classification as a labor organization was erroneous and that Local 480 more appropriately should be regarded as an Adco competitor due to its alleged subsidization of employee wages for union shop contractors in direct competition with Adco. As an Adco competitor, the company sought a ruling that Local 480 was ineligible to represent Adco employees. The remaining issues before the court pertain to the requisite review of the NLRB's findings that Adco violated section 8(a)(1) and 8(a)(3) of the Act with regard to employees Langford and Muncy, and the company's position on a wage increase. As such, the issues for review are as follows:

I. Did the NLRB err in refusing to allow discovery or presentation of evidence regarding Local Union 480's alleged conflict of interest with Adco by reason of a job targeting program?

II. Does substantial evidence exist to support the NLRB's conclusion that Raymond Langford was not a supervisor and thus protected from retaliatory discharge under the Act?

III. Does substantial evidence exist to support the NLRB's determination that Eric Muncy was discharged for union activity which is protected under the Act?

IV. Does substantial evidence exist to support the NLRB's conclusion that Adco attributed the lack of a wage increase to the ongoing union organizing activities?

Before addressing each issue, we note our standard of review in such cases which is familiar and well settled.

## II. Standard of Review

The court reviews the factual determinations of the NLRB under the "substantial evidence" standard. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456,

462 (1951); *NLRB v. Cal-Maine Farms, Inc.,* 998 F.2d 1336, 1339 (5th Cir.1993); *NLRB v. Lancer Corp.,* 759 F.2d 458, 460 (5th Cir.1985); *NLRB v. Gulf States United Tel. Co.,* 694 F.2d 92, 95 (5th Cir.1982). In *Universal Camera Corp.,* the Supreme Court defined substantial evidence as "more than a scintilla. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Universal Camera Corp.,* 340 U.S. at 477, 71 S.Ct. at 459, 95 L.Ed. at 462; *Cal-Maine Farms, Inc.,* 998 F.2d at 1339. Stated differently, substantial evidence must be sufficient to justify, if the trial went to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Id.*

In determining whether the factual findings of the NLRB are warranted, the reviewing court does not "pass on the credibility of the witnesses or reweigh the evidence." *NLRB v. Cal-Maine Farms, Inc.,* 998 F.2d 1336, 1339 (5th Cir.1993) (quoting *Helena Laboratories Corp. v. NLRB,* 557 F.2d 1183, 1187 (5th Cir.1977)). Instead, great deference is afforded the NLRB as to its credibility findings. *NLRB v. Ryder/P.I.E. Nationwide, Inc.,* 810 F.2d 502, 507 (5th Cir.1987); *Centre Property Management v. NLRB,* 807 F.2d 1264, 1268 (5th Cir.1987); *NLRB v. Florida Medical Center, Inc.,* 576 F.2d 666, 671 (5th Cir.1978).

### *III. Analysis*

I. Did the NLRB err in refusing to allow discovery or presentation of evidence regarding Local Union 480's alleged conflict of interest with Adco by reason of a job targeting program?

As noted above, Adco disputes that Local 480 can be classified as a labor organization in this case. Adco asserts that since Local 480 allegedly subsidizes the wages of unionized Adco competitors, then the local union is more of a competitor, making it ineligible to represent Adco's employees. To this end, Adco sought a subpoena duces tecum from the ALJ to obtain the union's records and an offer of proof on this issue, but the ALJ and a majority of the Board[3] concluded that such proof would be irrelevant. In the reasoning of the ALJ, such proof was irrelevant since the complaint alleged unlawful discrimination suffered as a result of protected concerted activity—not a refusal to bargain claim.

---

[3]The record indicates that Board member John N. Raudabaugh dissented. Member Raudabaugh would have accepted Adco's offer of proof.

[E]ven if Respondent's competitor contention were true it would not render the organizing activities of the employees unprotected.

The court has reviewed Adco's argument and finds it unpersuasive, although somewhat novel. The ALJ's assessment was correct. With the posture of the case *sub judice,* no union certification issues are implicated by the discharges of Langford, Muncy, and the other allegations of the complaint. It would require a giant leap to accept Adco's contention that the discharges of Langford and Muncy were unprotected, defensible actions because of the union's alleged competitor/conflict of interest prevented it from acting as a labor organization. There is no authority to support Adco's asserted defense.

In certain situations, an employer may be able to defeat a bargaining obligation with the employees' chosen representative on the basis that the representative has a disqualifying conflict of interest. *See NLRB v. Walker County Medical Center, Inc.,* 722 F.2d 1535, 1541 (11th Cir.1984); *NLRB v. David Buttrick Co.,* 399 F.2d 505, 507 (1st Cir.1968). The issue would arise only if the union won a representation election and was certified to represent company employees, and a conflict of interest dispute then arose between the bargaining agent and the employer. *See Potter v. Castle Const. Co.,* 355 F.2d 212, 216 n. 8 (5th Cir.1966); *Hendrix Mfg. Co. v. NLRB,* 321 F.2d 100, 106 (5th Cir.1963). However, employee rights to self organization are not affected by the possibility that the union representative of choice might ultimately be disqualified to bargain on the employees' behalf. *NLRB v. White Superior Div., White Motor Corp.,* 404 F.2d 1100, 1103 (6th Cir.1968). Consequently, the court finds no merit to this claim and moves forward to the remaining questions which challenge the substantial evidence findings of the ALJ and Board.

II. Does substantial evidence exist to support the NLRB's conclusion that Raymond Langford was not a supervisor and thus protected from retaliatory discharge under the Act?

Section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), makes it an unlawful labor practice for an employer to discriminate "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." It is elementary that an employer violates section 8(a)(3) and (1) of the Act by discharging employees because of their union activity. *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 397-98, 103 S.Ct. 2469,

2472-73, 76 L.Ed.2d 667 (1983); *NLRB v. Delta Gas, Inc.,* 840 F.2d 309, 311 (5th Cir.1988). More often than not, the employer's motive is the critical question in such cases. *NLRB v. Brown Food Stores,* 380 U.S. 278, 286-87, 85 S.Ct. 980, 985-86, 13 L.Ed.2d 839 (1965); *NLRB v. Mini-Togs, Inc.,* 980 F.2d 1027, 1032 (5th Cir.1993); *Marathon LeTourneau Co., Longview Div. v. NLRB,* 699 F.2d 248, 252 (5th Cir.1983). Where it is shown via direct or circumstantial evidence that anti-union considerations were a "motivating factor" in an employer's decision to discharge an employee, the employer has violated the Act. *NLRB v. Transportation Mgt. Corp.,* 462 U.S. 393, 397, 401-03, 103 S.Ct. 2469, 2472, 2474-75, 76 L.Ed.2d 667 (1983); *Electronic Data Systems Corp. v. NLRB,* 985 F.2d 801, 804 (5th Cir.1993); *NLRB v. Mini-Togs, Inc.,* 980 F.2d 1027, 1033 (5th Cir.1993); *NLRB v. Delta Gas, Inc.,* 840 F.2d 309, 311 (5th Cir.1988). In the case at bar, Adco discharged Raymond Langford three days after company officials observed him wearing union insignia, and the letter from Local Union 480 named Langford as a member of the organizing committee. Adco concedes that it fired Langford for union solicitation, an unlawful reason under the Act. However, "supervisors" are not entitled to protecti on under the Act. *See* 29 U.S.C. § 152(3) (1973). To this end, Adco argues that the ALJ and Board erred in finding that Langford was unlawfully discharged since, as a job foreman, Langford was a "supervisor" and not a covered "employee" under the Act.

Here, the court's review is limited to whether there is substantial evidence in the record supporting the conclusion that Langford was not a statutory supervisor. Furthermore, this court has "repeatedly declined" to merely second guess Board determinations regarding supervisory status. *Monotech of Mississippi v. NLRB,* 876 F.2d 514, 516 (5th Cir.1989); *NLRB v. KDFW-TV, Inc.,* 790 F.2d 1273, 1276 (5th Cir.1986); *NLRB v. Deaton, Inc.,* 502 F.2d 1221, 1228 (5th Cir.1974), *cert. denied,* 422 U.S. 1047, 95 S.Ct. 2665, 45 L.Ed.2d 700 (1975). With that backdrop in mind, a "statutory supervisor" is defined at 29 U.S.C. § 152(11).

> The term "supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or resopnsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

In determining whether someone is a supervisor, job titles reveal very little, if anything. *See*

*NLRB v. Dickerson-Chapman, Inc.,* 964 F.2d 493, 497 (5th Cir.1992) (actual duties, not job titles, determine status); *NLRB v. Yuba Natural Resources, Inc.,* 824 F.2d 706, 709 (9th Cir.1987) (same). Instead, the controlling factor is the authority that has been vested with the employee, whether expressly or by implication. *NLRB v. St. Mary's Home, Inc.,* 690 F.2d 1062, 1066 (4th Cir.1982); *Mid-Continent Refrigerated Serv. Co.,* 228 N.L.R.B. 917, 920 (1977).

Upon review of the record, the court finds substantial evidence supporting the NLRB's finding that Langford's status was that of a skilled craftsman guiding less experienced employees, and not that of a statutory supervisor. Langford spent ninety percent of his time working with his tools alongside co-workers. He was an experienced electrician who was dispatched and relied upon to carry forward Adco's objectives in the electrical contracting business. These objectives included the actual work of construction wiring, not administrative functions. The record reflects that Langford usually worked with only one apprentice and that he followed job blueprints and progress reports which dictated what work should be done and when. The fact that Langford, as a twenty-six year veteran electrician, guided and instructed new apprentices from time to time, illustrates nothing more than continuity in the workplace. This does not elevate him to supervisory status. *See Fall River Savings Bank v. NLRB,* 649 F.2d 50, 55 (1st Cir.1981). Likewise, the fact that Langford recommended someone for hire and brought problems with apprentice employees to the attention of Buie is nothing more than what Adco, or any other employer, would expect from experienced employees. *See George C. Foss Co. v. NLRB,* 752 F.2d 1407, 1411 (9th Cir.1985) (prudent employers seek advice of foremen in evaluating employees; this does not elevate foreman to supervisor status); *NLRB v. Security Guard Serv., Inc.,* 384 F.2d 143, 148 (5th Cir.1967) (authority to make recommendations does not show supervisory status). On two occasions when Langford "recommended" apprentices for administrative action, it was Superintendent Buie who made and executed the final decision in both instances.[4] Contrary to Adco's assertions that Langford possessed

---

[4]Langford once sent an apprentice employee back to the office for reassignment, by Buie, to another job. On a second occasion, Langford experienced "personality" problems and difficulties with an apprentice for not following his instructions. The record indicates that Buie terminated the apprentice upon receiving information from Langford that the apprentice was insubordinate and a poor worker.

"traditional" supervisory authority, Langford was never informed by Rick Buie or Whit Adams that he possessed the authority to approve absences, grant time off, determine work hours or set staffing levels.[5] On rare occasions when Langford required employees to work overtime, he was following company policy and Buie's instructions that overtime should be used to complete a job rather than incurring travel expenses to complete the work on a subsequent day. Additionally, the performance of some clerical duties pertaining to time sheets, daily logs, and ordering materials do not demand supervisory status. These are routine functions which do not implicate the need for independent judgment from one vested with supervisory authority. We also note that Langford had attended only one "shop/foreman" meeting during the year he was with Adco. This meeting was either preceded or followed by a meeting of all Adco employees; and, the Board appropriately concluded that Langford's attendance at only one such meeting indicated an absence, if anything, of supervisory authority. However, the court perceives that the most compelling illustration of Langford's actual duties is that ninety percent of the time he was engaged in manual labor in the business of construction wiring. Apparently, the uncontradicted evidence is that such "other duties" accounted for only ten percent of his time.

Finally, the court is unpersuaded that the finding of the regional director in a separate representation hearing that Adco's job foremen, as a group, were supervisors, is binding upon the ALJ, the Board, and this court. Employment status at issue in a prior representation case may be re-litigated in an unlawful discharge proceeding. *Rock Hill Tel. Co. v. NLRB,* 605 F.2d 139, 143 (4th Cir.1979); *Serv-U-Stores, Inc.,* 234 NLRB 1143, 1144 (1978). Langford had already been discharged by Adco at the time of the representation hearing; therefore, his status was not in issue before the regional director. A single job classification may include both supervisory and nonsupervisory employees. *NLRB v. Dickerson-Chapman, Inc.,* 964 F.2d 493, 497 (5th Cir.1992). The fact that other employees with the same title, "foreman," were deemed "supervisors" does not compel a finding that Langford was simply because he shares a job title with them.

---

[5]"Alleged" supervisors who are never informed that they possess supervisory status are rank-and-file employees. *NLRB v. KDFW-TV, Inc.,* 790 F.2d 1273, 1278 (5th Cir.1986).

III. Does substantial evidence exist to support the NLRB's determination that Eric Muncy was discharged for union activity which is protected under the Act?

Perhaps the most basic right expressed in the Act is the right to join or form a labor organization. 29 U.S.C. § 157 (1973). Section 8(a)(1) of the Act, codified at 29 U.S.C. § 158(a)(1), makes it unlawful for an employer to interfere with, restrain or coerce employees in the exercise of their rights guaranteed in section 157. Therefore, Eric Muncy's discharge was an illegal act if it was motivated by Adco's anti-union animus. The ALJ and NLRB concluded that Muncy's discharge was, in fact, motivated by Adco's anti-union disposition. As explained above, as a reviewing court our inquiry is limited to whether there was substantial evidence in the record to support the determination.

When Eric Muncy interviewed for the job, Muncy was asked about his thoughts regarding labor unions. Muncy was informed that unions were disliked at Adco and would not be tolerated. In addition to Eric Muncy, Adco acknowledges that it terminated Raymond Langford for his union support; and, Whit Adams stated to Eric Lott that if he [Lott] wanted a union, he should quit and "go union."[6] Within weeks after Eric Muncy was hired, the company became aware of Muncy's union support. Muncy was named as a member of the organizing committee in a letter delivered from Local 480, and he openly wore a union badge and cap with the union insignia.

Adco's articulated reason for discharging Muncy was that he failed to work overtime on Saturday, September 15th. However, Muncy informed the job foreman that he would not be able to work on Saturday, and he was never informed by anyone that he would be fired, or disciplined, if he did not report to work. As evidence of pretext, the record reflects that the Board considered the fact that Adco had not discharged other employees who failed or refused to work overtime. Evidence which tends to suggest that the stated reasons are pretext is relevant in determining if an unlawful motive can be inferred. *Property Resources Corp. v. NLRB,* 863 F.2d 964, 967 (D.C.Cir.1988); *NLRB v. Dillon Stores, Inc.,* 643 F.2d 687, 693 (10th Cir.1981); *Shattuck Denn Mining Corp. v. NLRB,* 362 F.2d 466, 470 (9th Cir.1966). The record indicates at least two instances, involving Cory

---

[6]Significant indicators for the Board in discerning employer motive are anti-union bias, open hostility to organized labor, and the timing of certain events. *Electronic Data Systems Corp. v. NLRB,* 985 F.2d 801, 805 (5th Cir.1993); *NLRB v. Brookwood Furniture,* 701 F.2d 452, 466 (5th Cir.1983); *NLRB v. Dan River Mills,* 274 F.2d 381, 384 (5th Cir.1960).

Williams and Eric Lott, when Adco did not fire employees for failing to report for overtime duties.[7] Such disparate treatment is evidence of discrimination under section 8(a)(3). *Delco-Remy Div., General Motors Corp. v. NLRB,* 596 F.2d 1295, 1305 (5th Cir.1979); *NLRB v. Broyhill Co.,* 514 F.2d 655, 657-660 (8th Cir.1975). Additionally, the Board reasonably discredited the claim that Adco released Muncy, in part, for allegedly lying about the hours he worked on Friday, September 14th. Following the chronology of events on Monday, September 17th, Rick Buie questioned Eric Muncy about his Friday hours *after* he had fired him for missing work on Saturday. If anything, this after-the-fact justification tends to bolster's the Board's finding that the stated reason was pretextual.

IV. Does substantial evidence exist to support the NLRB's conclusion that Adco attributed the lack of a wage increase to the ongoing union organizing activities?

Finally, the court observes that Eric Lott testified at the hearing before the ALJ that he had a conversation with Adco President, Whit Adams, while out on a job site. Lott's testimony was that Adams stated he was unable to give a pay raise because of the cost of the union movement. While Adams apparently had a different recollection of the conversation, the ALJ and Board were justified in crediting Lott's version of the conversation, particularly since Lott had executed an affidavit less than one week after the conversation with Adams. Lott's affidavit was consistent with his testimony at the hearing. Suffice it to say that an employer violates section 8(a)(1) of the Act by attributing an organized labor movement for its failure to grant a benefit. *Hovey Electric,* 302 NLRB No. 77, 1991 WL 163785 (Apr. 11, 1991); *NLRB v. Cable Vision, Inc.,* 660 F.2d 1, 6-7 (1st Cir.1981); *Gulf States Mfg., Inc. v. NLRB,* 598 F.2d 896, 900 (5th Cir.1979); *NLRB v. Longhorn Transfer Serv. Inc.,* 346 F.2d 1003, 1005-1006 (5th Cir.1965).

## IV. Conclusion

In summary, we find sufficient evidence in the record to support the NLRB's adoption of the ALJ's Opinion and Order concluding that Adco Electric violated 29 U.S.C. § 158(a)(1) and (3) of the National Labor Relations Act. Accordingly, we enter judgment enforcing the order of the National

---

[7]Eric Lott testified that he was verbally admonished for missing a Saturday work day. Cory Williams testified that he had missed two Saturday work days, and the only response from the company was, "we missed you Saturday, we could have used you."

Labor Relations Board in Adco Electric Incorporated and International Brotherhood of Electrical Workers, Local Union No. 480, AFL-CIO, No. 15-CA-11329-4.