SMITH, Circuit Judge,
dissenting.
The majority holds that an individual becomes a supervisor under the NLRA by merely recommending a family friend for hire. Because this construes supervisory authority too broadly and will unnecessarily strip individuals of their organizational *930 rights, I respectfully dissent. Specifically, I disagree with the majority’s determination that Johnston possessed delegated authority to participate in the hiring process. Further, insufficient evidence exists to support the conclusion that Johnston exercised independent judgment in effectively recommending Moses and Horn for hire.
Under the NLRA, an individual is a “supervisor” if (1) the individual “ha[s] authority ... effectively to recommend” hiring, and (2) “the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.” 29 U.S.C. § 152(11); see also Multimedia KSDK, 303 F.3d at 899 (8th Cir. 2002).

1. Authority to Effectively Recommend Hiring

Whether an individual has supervisory authority to recommend hiring depends upon whether the individual’s hiring recommendations are in fact effective. Your Public Radio Corp., 2014 WL 3613193, at *8. To determine this,
the Board examines the amount of weight the employer affords the recommendation. Specifically, the Board has found recommendations effective when “management is prepared to implement the recommendation without an independent investigation of the relevant circumstances.” In the absence of such a requirement, an employer’s reliance on word-of-mouth referrals could confer supervisory status on the entire staff, since it is not uncommon for employers to expect their more experienced employees to recommend someone for hire. Finally, an individual does not “effectively recommend hiring” unless there was “delegated authority to participate in the hiring process” and not merely an employer’s respect for an individual’s opinion on an applicant.
Id. at *8 (emphasis added) (citations omitted) (first quoting Chevron USA, 309 N.L.R.B. 61, 65 (1992); then quoting Jefferson Chem., 237 N.L.R.B. at 1102).
Although the inquiry focuses on the weight an employer gives a recommendation, the Board has consistently applied the rule that an individual does not effectively recommend hiring unless the individual has delegated authority to participate in the hiring process and the recommendation for hire is not approved merely out of respect for the judgment of the individual. See Cook Inlet Tug & Barge, Inc., 362 N.L.R.B. No. 111, 2015 WL 4101331, at *27 (June 30, 2015); Your Public Radio Corp., 2014 WL 3613193, at *8; Jefferson Chem., 237 N.L.R.B. at 1102 (“The fact that a recommendation for the employment of an applicant is approved out of respect for the judgment of another, rather than because of his delegated authority to participate in the hiring process, is also not an indicium of supervisory authority.”).
The majority places great weight on Oglesby not conducting any independent investigation. This fact alone, however, is insufficient to confer supervisory status upon Johnston — there must be “delegated authority to participate in the hiring process,” Your Public Radio Corp., 2014 WL 3613193, at *8 (quoting Jefferson Chem., 237 N.L.R.B. at 1102), and the hiring recommendation must not be followed “merely [out of] an employer’s respect for an individual’s opinion on an applicant,” id.
The majority points out that the Board “has not required the delegation of such authority to be explicit” and has found delegated authority when an individual “handled virtually every aspect of the hiring process.” Part II.A. supra. The majority notes that this includes when “the supervisors screened applicants or took it upon themselves to recruit co-workers *931 they thought would be a good fit for the job; they met with applicants; and they made recommendations to management, who ‘relied exclusively on their recommendations when making job offers.’ ” Id. (quoting Your Public Radio Corp., 2014 WL 3613193, at *9).
However, an individual who screens, recruits, and meets with applicants' before making a recommendation to management does not necessarily have delegated authority to participate in the hiring process. See, e.g., NLRB v. Harmon Indus., Inc., 565 F.2d 1047, 1050 (8th Cir. 1977) (“Sufficient evidence supports the conclusion that Cox did not effectively recommend that other employees be hired, fired or disciplined. Though Cox recommended that a replacement be hired in the repair department when Sullivan left, and participated in interviews of applicants, ... [and] gave his opinion on the best applicant... ,”).[14] In Jefferson Chemical, management asked an employed welder to recruit additional welders, the welder made recommendations for the hiring of other welders by vouching for their character and qualifications, and the recommended welders were subsequently hired. 237 N.L.R.B. at 1102. Yet the Board determined that the welder’s participation in the hiring process was insufficient to confer supervisory status because “[a]ny attention paid to [the welder’s] opinions or recommendations was based upon deference to his expertise, not to his delegated power.” Id. And “[t]he fact that a recommendation for the employment of an applicant is approved out of respect for the judgment of another, rather than because of his delegated authority to participate in the hiring process, is also not an indicium of supervisory authority.” Id.
Johnston guiding Moses and Horn through their hiring paperwork and personally vouching for their character does not constitute sufficient proof that he possessed delegated authority to participate in the hiring process. Johnston is not meaningfully distinguishable from the welder in Jefferson Chemical. Here, Johnston’s recommendations were limited to personal references — nothing more. And it is unclear how Oglesby’s approval of hiring Moses and Horn amounts to anything more than approval out of respect for Johnston’s judgment. Thus, I do not agree that Johnston possesses sufficient authority to effectively recommend hiring.

2. Independent Judgment

The presence of supervisory authority also depends upon whether the individual exercised independent judgment in making hiring recommendations. The use of independent judgment “contemplates more than the mere screening of applications or other ministerial participation in the interview and hiring process.” Your Public Radio Corp., 2014 WL 3613193, at *8 (quoting J.C. Penney Corp., 347 N.L.R.B. at 129). The Board has explained that its independent-judgment analysis turns on the freedom of the individual to evaluate data, formulate an opinion, and recommend accordingly. As the Board explained in Oakwood:
To ascertain the contours of “independent judgment,” we turn first to the ordinary meaning of the term. “Independent” means “not subject to control by *932 others.” Webster’s Third New International Dictionary 1148 (1981). “Judgment” means “the action of judging; the mental or intellectual process of forming an opinion or evaluation by discerning and comparing.” Webster’s Third New International Dictionary 1223 (1981). Thus, as a starting point, to exercise “independent judgment” an individual must at a minimum act, or effectively recommend action, free of the control of others and form an opinion or evaluation by discerning and comparing data.... [Tjhese requisites are necessary, but not in all instances sufficient, to constitute “independent judgment” within the meaning of the Act.
348 N.L.R.B. at 692-93 (footnote omitted). Importantly, the Board “must interpret ‘independent judgment’ in light of the contrasting státutory language, ‘not of a merely routine or clerical nature.’ ” Id. at 693 (quoting 29 U.S.C. § 152(11)). Thus, “[i]t may happen that an individual’s [effective recommendation of action] will be based on independent judgment within the dictionary definitions of those terms, but still not rise above the merely routine or clerical.” Id. If so, the exercise of such authority is insufficient to confer supervisory status. Thus, it is important to “assess the degree of discretion exercised by the putative supervisor.” Id.
The exercise of independent judgment is considered more than merely routine or clerical when an individual actively exercises some form of discretionary scrutiny in assessing an applicant. Examples of independent judgment that is more than merely routine or clerical include when employees complete evaluation forms that “provide! ] for the acceptance or rejection of the [applicant],” NLRB v. Chardon Rubber Co., 90 Fed.Appx. 84, 91 (6th Cir. 2003); “make their hiring decisions and recommendations based on their own assessments of what skills are needed and whether the [applicants] ... have the appropriate skills or qualifications,” In re Fred Meyer Alaska, Inc., 334 N.L.R.B. 646, 649 (2001); and are “called upon to assess [an] applicants] experience, ability, attitude, and character references, among other factors,” Oakwood, 348 N.L.R.B. at 693.
However, the exercise of independent judgment is considered merely routine or clerical when an individual does not actively evaluate an applicant or only does so in an isolated instance. Examples of independent judgment that is merely routine or clerical include when employees have only “informal ‘discussions’ with and [give] ‘suggestions’ to th[eir] superiors” about hiring and transfers, George C. Foss Co. v. NLRB, 752 F.2d 1407, 1411 (9th Cir. 1985); “simply steer[ ] applicants through the system and complete!] their hiring paperwork,” J.C. Penney Corp., 347 N.L.R.B. at 129; and are “dictated or controlled by detailed instructions, whether set forth in company policies or rules, the verbal instructions of a higher authority, or in the provisions of a collective bargaining agreement,” Oakwood, 348 N.L.R.B. at 693.
The majority holds that sufficient evidence supports the conclusion that Johnston exercised independent judgment in effectively recommending Moses and Horn for hire because “ ‘Johnston had an independent basis for assessing’ Moses and Horn and their ‘readiness to work’ given that he knew both candidates.” Part II.A. supra. “Such familiarity allowed Johnston to assess their ‘experience, ability, attitude, and character references, among other factors,’ and so the Board did not act capriciously in finding he exercised independent judgment.” Id. (quoting Oakwood, 348 N.L.R.B. at 693).
However, having personal familiarity with an applicant’s family is not the same *933-945 as- forming “an opinion or evaluation by discerning and comparing data.” See Oak-wood, 348 N.L.R.B. at 692-93. And the majority cites no authority for the proposition that merely knowing an applicant’s family automatically qualifies as a sufficient basis upon which an individual may exercise independent judgment in recommending for hire. Instead, it seems that this is precisely the type of recommendation that the Board avoids elevating to supervisory status. See, e.g., Jefferson Chem., 237 N.L.R.B. at 1102.
Further, even if recommending a family friend for hire evidences independent judgment within the dictionary definitions of those terms, it does not rise above the merely routine or clerical. See Oakwood, 348 N.L.R.B. at 693. In fact, it is no more than what employers expect of experienced employees — referring acquaintances to their employer for possible hire. See Your Public Radio Corp., 2014 WL 3613193, at *8; NLRB v. ADCO Elec. Inc., 6 F.3d 1110, 1117-18 (5th Cir. 1993); George C. Foss Co., 752 F.2d at 1411.
Thus, I disagree with the majority’s classification of Johnston’s personal familiarity with Moses and Horn as an independent basis for assessing their employa-bility, and I would hold that insufficient evidence exists to support the conclusion that Johnston exercised independent judgment in effectively recommending Moses and Horn for hire.
I therefore respectfully dissent.

. See also J.C. Penney Corp., 347 N.L.R.B. at 129 (rejecting supervisory authority of an individual who "simply steered applicants through the system and completed their hiring paperwork”); The Door, 297 N.L.R.B. 601, 601-02 (1990) (finding that an employee lacked authority to effectively recommend for hire when his role in the hiring process was limited to screening resumes, making recommendations regarding technical qualifications, and participating in interviews).