IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 00-60173

NATIONAL LABOR RELATIONS BOARD,

                                        Petitioner,

     versus

USA POLYMER CORP,

                                        Respondent.

Petition for Enforcement of the
Order of the National Labor Relations Board

November 6, 2001

Before GARWOOD, PARKER, and DENNIS, Circuit Judges.

GARWOOD, Circuit Judge:

     Acting on charges filed by the International Ladies Garment Workers' Union (ILGWU), the General Counsel of the National Labor Relations Board (the NLRB or the Board) issued a complaint against U.S.A. Polymer Corp. (Polymer) on March 21, 1995. The complaint alleged violations of 29 U.S.C. § 158 (a)(1) and (3), and eventually was consolidated with a subsequent complaint alleging violations of section 158(a)(4), (3), and (1). An administrative

law judge (ALJ) issued a decision on March 25, 1996, finding merit in most of the allegations. Polymer filed timely exceptions. The NLRB issued a decision affirming the ALJ's conclusions on August 24, 1999. Polymer filed a motion for reconsideration, to reopen the record, and for rehearing dated September 24, 1999, which was received by NLRB on September 29. On October 5, the Associate Executive Secretary of the NLRB denied the motion as untimely. On October 8, Polymer filed a supplemental motion for reconsideration, reopening, and rehearing, which the Board denied on November 23. In March 2000 the Board filed with this court its application for enforcement of its August 24, 1999 order. 29 U.S.C. § 160(e).

## Facts and Proceedings Below

Polymer operates a plastics recycling facility in Houston, Texas. Its business is to recycle used plastic containers into plastic pellets that are then sold as raw material to manufacturers. Polymer employed sixty-four people at its inception, and reached a peak workforce of ninety-two in February 1994. At the time of the events that were the subject of the instant complaint, Polymer employed sixty-eight non-supervisory employees, but since then the work force has dwindled to thirty-six.

In the fall of 1994, some of Polymer's employees contacted the ILGWU. In early October, the ILGWU began a campaign to unionize Polymer's workers. In January 1995, Polymer laid off twenty-nine

employees, and then another ten in July.  Since 1995, the workforce of Polymer has remained at around thirty-five employees.

The ILGWU filed a charge with the NLRB, alleging various unfair labor practices, including charges that the layoffs were motivated by a desire to quash the unionization campaign.  The General Counsel of the NLRB issued a complaint against Polymer on March 21, 1995.  The complaint was heard before an ALJ from June 5, 1995 through June 21, 1995, followed by a second two-day hearing in October.  The ALJ issued his decision on March 25, 1996, and found that Polymer had committed numerous violations of the NRLA.  The ALJ recommended the imposition of a bargaining order under *NLRB v. Gissel Packing Co.*, 89 S.Ct. 1918 (1969).  Polymer timely appealed the ALJ's decision to the Board.

For some unexplained reason, the NLRB did not issue its decision and order until August 24, 1999, more than three years after the ALJ's decision.  The Board affirmed the ALJ's findings that, *inter alia*, "[Polymer] unlawfully threatened employees with more onerous working conditions, physical harm, layoff, discharge and other unspecified reprisals for engaging in union and protected concerted activity."  The Board also affirmed the ALJ's findings that Polymer made good on its threats by means of the January and July 1995 layoffs.  *Id*.  The ALJ found, and the Board affirmed, that Polymer had violated several sections of the National Labor Relations Act (NLRA).  *See* 29 U.S.C. § 158 (a)(1), (3), and (4).

The Board agreed with the ALJ that the severity of Polymer's conduct required the imposition of a bargaining order under *Gissel*. Under the bargaining order, Polymer was directed to bargain with ILGWU's successor union, the United Needle Trades, Industrial and Textile Employees (UNITE).

When the Board's order issued, Polymer's original counsel on this matter had retired, and Polymer was apparently in the process of finding replacement counsel. Polymer's new counsel filed a Motion for Reconsideration and to Reopen the Record with the Board. The motion is dated September 24, 1999, and was received by the Board on September 29, 1999. In that motion, Polymer argued that circumstances had changed since the ALJ's decision, including the restructuring of its business, a high turnover rate (only five employees who were working at the time of the complaint still worked for Polymer), and the passage of four and one half years. Polymer asked for reconsideration of the bargaining order in light of these changed conditions. On October 5, 1999, Polymer received a letter from the NLRB informing Polymer that the motion for rehearing was untimely. That same day, Polymer filed a motion contesting the untimeliness of its original motion. On November 23, 1999, the Board ordered that Polymer's motion for reconsideration would not be considered, and that the order would stand. The Board filed its application for enforcement of its August 24, 1999 order with this court in March 2000. Polymer now

-4-

contests the enforcement of the order.

## Discussion

The Federal Circuit Courts are almost unanimous in holding that the NLRB must take current conditions into account when it determines whether to issue a bargaining order under *NLRB v. Gissel Packing Co.*, 89 S.Ct. 1918 (1969).[1]   *See, e.g., Charlotte Amphitheater Corp. v. NLRB*, 82 F.3d 1074, 1078 (D.C. Cir. 1996) (noting that all Circuits except the Ninth require the NLRB to consider changed circumstances when issuing *Gissel* bargaining orders); *NLRB v. Cell Agriculture Manuf. Co.*, 41 F.3d 389, 398-99 (8th Cir. 1994). Relevant changed circumstances include passage of time and turnover in the workforce.  *Charlotte*, 82 F.3d at 1078. The Board should at least consider significant turnover and passage of time when determining whether a bargaining order was

---

[1] Of course, the order may still be appropriate despite the changed conditions, as illustrated by *Chromalloy v. NLRB*, 620 F.2d 1120 (5th Cir. 1980).  *See also Bandag, Inc. v. NLRB*, 583 F. 2d 765 (5th Cir. 1978). The NLRB relies on *Chromalloy* for the proposition that a *Gissel* case should *never* be remanded to the Board for reconsideration in light of changed circumstances.  This is an incorrect oversimplification. We held in *Chromalloy* that while the existence of subsequent events is relevant, the Board may still decide that a bargaining order is required, and that the Board need not determine that the actual sentiment of the majority of the work force favors the union before issuing a bargaining order.  *Chromalloy*, 620 F.2d at 1131-32.  In *Chromalloy*, we held that the Board was not required in all cases to reopen the record for consideration of events occurring between the ALJ's decision and the Board's order.  However, the Board's decision in *Chromalloy* was issued five months after the ALJ's decision; there was no issue of lengthy delay as in the instant case.  *Id*. at 1123, 1132.

appropriate.[2]

However, despite the weight of the law in other Circuits, the law on this point in the Fifth Circuit is somewhat confused. In *NLRB v. American Cable*, 427 F.2d 446 (5th Cir. 1970), this court held that the Board must consider the current circumstances when determining whether to issue a bargaining order. *Id.* at 448-49. While *American Cable* was never overruled, in a subsequent opinion we stated that "in a case not involving a remand to the Board," the Court should evaluate the appropriateness of the bargaining order "as of the date of the unfair labor practice proceedings, not as of the date when the matter comes before the court." *See NLRB v.*

_____

[2] Apparently this lesson has been a difficult one to learn for the NLRB. The D.C. Circuit recently expressed some frustration with the Board's repeated refusals to consider current circumstances when issuing bargaining orders:

> We have repeatedly called the Board to task for its intransigent refusal to accept and act upon our instructions that the appropriateness of a bargaining order must be assessed as of the time it is issued. Nor have we been alone.
> Given the changes in its own membership, it may well be that the Board is devoid of an institutional memory; but this court is not. Perhaps it believes it can wear us down; after more than twenty years, it should have learned that it cannot. As a consequence of its stubborn refusal to accept the holdings of virtually every circuit that has considered the matter, it has squandered a vast amount of our time as well as its own and has caused delays in the ultimate resolution of cases that cannot be laid at the feet of recalcitrant employers. If the Board continues to disagree with us, it is of course free to seek Supreme Court review.

*Charlotte*, 82 F.3d at 1079 (citations omitted).

*Dadco Fashions, Inc*., 632 F.2d 493, 497 n.7 (5th Cir. 1980).  This line of cases is based on *J.P. Stevens & Co. v. NLRB*, 441 F.2d 514, 525 n.16 (5th Cir. 1971), which did *not*, in fact, hold that the time for consideration of current conditions was the time of the unfair labor practice proceedings.  Instead, in *J.P. Stevens* we held that the proper time for evaluation of "current circumstances" was the time at which *the Board* issued its bargaining order.  *Id*.  This holding was read in *NLRB v. Gibson Prod. Co.*, 494 F.2d 762, 766 n.4 (5th Cir. 1974) to mean that this Court should not remand to update the record to take into account events subsequent to the *Board*'s (not the ALJ's) action.  *Id*.   We went one step further in *Dadco*, and held that in a case not involving a remand to the Board, the Court should evaluate the appropriateness of the bargaining order as of the date of the unfair labor practice proceedings, not as of the date when the matter came before the *Court*.  *Dadco*, 632 F.2d at 497 n. 7.  Despite our admittedly confusing line of cases, *American Cable* has never been overruled, and, in fact, now represents the overwhelming majority position among the Circuits on this issue.

Under *American Cable* the Board must consider evidence of changed circumstances when it evaluates the appropriateness of a *Gissel* bargaining order.  If the Board had before it evidence that circumstances at Polymer's plant were in relevant respects significantly different from those at the time of the ALJ's decision recommending a bargaining order the Board erred when it

-7-

refused to take the changes into account in determining whether a bargaining order should issue. *We* should not, however, take into account changes in circumstance that have occurred *since* the time of *the Board's decision*.

The Board's procedural rules permit an employer to submit a motion to reopen the record after the ALJ's decision but before the Board has ruled. After the filing of timely exceptions and briefs, the Board "may decide the matter forthwith upon the record, or after oral argument, or may reopen the record and receive further evidence before a member of the Board or other Board agent or agency, or may make other disposition of the case." 29 C.F.R. § 102.48(b). Section 102.48(b) grants the NLRB wide discretion in the manner in which it deals with appeals from decisions of the ALJ and permits the Board to entertain motions to reopen the record in order to receive evidence of changed circumstances. At oral argument, both Polymer and the NLRB agreed that the Board's procedural rules would have permitted Polymer to file a motion to reopen or update the record prior to the Board's decision.[3] Although there is no clear procedural vehicle for such a motion, we agree with the parties' interpretation of the Board's regulations. Polymer could have submitted a motion to update the record at any

---

[3] Employers in other cases have moved to reopen the record in the time between the ALJ's order and the decision of the Board. *See, e.g.*, *Texas Petrochemicals Corp. v. NLRB*, 923 F.2d 398, 401 (5th Cir. 1991).

time before the Board's decision, but made no such motion until a month after that decision.

The NLRB denied Polymer's motion for reconsideration and reopening because, according to its order, it had no discretion to allow filings after the twenty-eight day time limit imposed by 29 C.F.R. § 102.48. Polymer argues that the NLRB had discretion under 29 C.F.R. § 102.48(d)(2) to consider the late motion.[4] The Board

---

[4]

§ 102.48(d) reads in pertinent part:
(1) A party to a proceeding before the Board may, because of extraordinary circumstances, move for reconsideration, rehearing, or reopening of the record after the Board decision or order. A motion for reconsideration shall state with particularity the material error claimed and with respect to any finding of material fact shall specify the page of the record relied on. A motion for rehearing shall specify the error alleged to require a hearing *de novo* and the prejudice to the movant alleged to result from such error. A motion to reopen the record shall state briefly the additional evidence sought to be adduced, why it was not presented previously, and that, if adduced and credited, it would require a different result. Only newly discovered evidence, evidence which has become available only since the close of the hearing, or evidence which the Board believes should have been taken at the hearing will be taken at any further hearing.
 (2) Any motion pursuant to this section shall be filed within 28 days, or such further period as the Board may allow, after the service of the Board's decision or order, except that a motion for leave to adduce additional evidence shall be filed promptly on discovery of such evidence. Copies of any request for an extension of time shall be served promptly on the other parties.
29 C.F.R. § 102.48(d).

now takes the position, as it stated in its order, that the provision allowing late filings refers only to the Board's ability to allow for extensions of time when requests for such extensions are timely filed.

In *Camvac v. NLRB*, 877 F.2d 62 (6th Cir. 1989) (unpublished), the Sixth Circuit faced a case with an almost identical procedural history. As in the present case, in *Camvac* there was a long delay between the ALJ's original order and the Board's decision, and *Camvac* filed its motion for reconsideration three weeks after the twenty-eight day period allowed by section 102.48. The Sixth Circuit held that section 102.48 specifically allowed the Board to accept motions beyond the twenty-eight day period, and that the Board's failure to accept the "untimely" motion was an abuse of discretion.

Although *Camvac* was an unpublished opinion, we agree with the Sixth Circuit that section 102.48 grants the NLRB discretion to entertain motions for rehearing after the twenty-eight day period has expired. The NLRB argues that section 102.48 simply allows the Board to extend the time for filing motions upon receipt of a timely motion for an extension. However, this argument is undercut by the fact that section 102.48 specifically provides that evidence that has become available "since the close of the hearing" can be accepted if it is filed promptly upon discovery. 29 C.F.R. § 102.48(d)(1). Still, section 102.48 certainly does not command the

Board to accept late filings–the treatment of those filings is within the discretion of the Board.

Polymer also argues that the Board had discretion to accept its filing under 29 C.F.R. § 102.111(c). After initially stating that it had no discretion, the Board (in its order denying the motions for reconsideration) thereafter goes on to hold that section 102.111(c) governs acceptance of late filings, and that section 102.111(c) allows the Board to consider late filings "upon good cause shown based on excusable neglect and when no undue prejudice would result" and makes specific provision for acceptance of late filings. 29 C.F.R. § 102.111(c). The Board found that Polymer's having to hire a new lawyer in the time between the order and the due date did not constitute excusable neglect and that therefore the requests for rehearing and reopening were denied. Although the amount of discretion that the Board has to accept late filings is somewhat unclear, it is clear that the Board does possess at least some discretion under both section 102.48(d)[5] and section 102.111(c). The Board's action in finding lack of good cause based on excusable neglect is reviewed for abuse of discretion. *See, e.g., Hospital Del Maestro v. N.L.R.B.*, 263 F.3d 173, 175 (1st Cir. 2001).

Under either provision we cannot say that the Board's decision

---

[5] We see no reason that a party that files an untimely motion under § 102.48(d) would not also have to demonstrate excusable neglect.

to deny Polymer's untimely motion for reconsideration was an abuse of discretion, even thought the Board had taken an extraordinary amount of time to issue its merits decision in this case. It is not the Board's responsibility to continually update the factual picture that the parties have provided. While the Board must consider properly presented or tendered evidence of materially changed relevant circumstances in bargaining order cases, we can see no reason why the Board itself should be required to gather evidence. The party that seeks to benefit from demonstrating a change of circumstances bears the burden of timely providing the Board with evidence of those changes. The Board is entitled to assume, in the face of the parties' silence, that the facts as initially presented continue to adequately describe the employer's workforce.

The Board's delay does not excuse Polymer's failure to timely provide the evidence it seeks to introduce. Even though Polymer was in the process of hiring a new lawyer at the time of the Board's decision, this does not require the Board to excuse Polymer's failure to file even a request for an extension of time within the twenty-eight day period. And, Polymer's acquisition of an attorney after the decision does not require the Board to excuse its failure to move to reopen the record prior to the Board's decision. There is no indication that any of the changes in circumstance that Polymer claims invalidate the bargaining order

occurred immediately prior to the Board's decision. Instead, those changes are alleged to have occurred gradually, over a period of years. A party must be given a reasonable amount of time to file a motion to reopen the record after the events that change the party's circumstances. Had a sudden change in Polymer's business or workforce occurred only a few months before the Board's decision, perhaps their failure to update the Board before the decision would be excusable. However, there is no indication that this is the case. Polymer appears to have made a conscious decision to wait until after the Board's decision to inform the Board of the significant changes that had taken place in its workforce. The Board's refusal to accept Polymer's untimely motion was not an abuse of discretion.

Polymer also challenges the substance of the Board's decision approving the *Gissel* bargaining order. Polymer claims that the Board's decision is unsupported by the record. The Board should have evaluated the propriety of the *Gissel* order using the most current set of facts properly before it. Since Polymer's evidence of changed circumstances was not properly before the Board, the most current set of facts was the evidence presented to the ALJ. The NLRB's findings of fact, if not influenced by an erroneous view of the law, are conclusive if supported by substantial evidence on the record considered in its entirety. *Texas Petrochemicals v. NLRB*, 923 F.2d 398 (5th Cir. 1991). A reviewing court should not

-13-

re-evaluate the credibility of witnesses, re-weigh the evidence, or reject reasonable Board inferences simply because other inferences might also have reasonably been drawn. *NLRB v. Adco Electric, Inc.*, 6 F.3d 1110, 1115 (5th Cir. 1993).

The imposition of a bargaining order is an extraordinary remedy, which should be issued upon a determination "that the possibility of erasing the effects of past practices and of ensuring a fair election ... by the use of traditional remedies, though present, is slight and that employee sentiment ... would, on balance, be better protected by a bargaining order ...." *Gissel*, 89 S.Ct. at 1940. Upon review of the record in this case, we find that substantial evidence on the record as a whole supports the Board's conclusion that Polymer threatened and laid off a sizeable number of its workers due to union activity at its Houston plant. On the basis of the record properly before it, the Board did not abuse its discretion when it issued the bargaining order proposed by the ALJ.

## Conclusion

The NLRB must consider current circumstances when issuing a *Gissel* bargaining order. But, the NLRB is entitled to treat the facts as of the ALJ's decision as static until the parties provide the NLRB with evidence that the relevant circumstances have materially changed, and Polymer has not timely presented or sought to present any such evidence. Because the NLRB did not abuse its

discretion in refusing to accept Polymer's untimely motion, the NLRB's bargaining order should be evaluated on the basis of the facts in evidence before the ALJ.  Since under those facts the Board did not abuse its discretion when it imposed the bargaining order, the order must be enforced.

The Board's application for enforcement is GRANTED.