# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-2894

NATIONAL LABOR RELATIONS BOARD,

*Petitioner,*

and

INTERNATIONAL BROTHERHOOD OF TEAMSTERS
LOCAL #731, AFL-CIO,

*Intervenor,*

*v.*

ORLAND PARK MOTOR CARS, d/b/a MERCEDES
BENZ OF ORLAND PARK,

*Respondent.*

On Application for Enforcement of an
Order of the National Labor Relations Board
Nos. 13-CA-38061 and 13-CA-38185

ARGUED APRIL 16, 2002—DECIDED OCTOBER 29, 2002

Before CUDAHY, COFFEY and WILLIAMS, *Circuit Judges.*

COFFEY, *Circuit Judge.* Mercedes Benz of Orland Park operates a car dealership in south suburban Cook County, Illinois. In August 1999, the company's non-mechanical service employees (consisting of car drivers, porters, detailers, and parts department employees) voted to join the International Brotherhood of Teamsters Local #731 and thereafter went on strike. The purpose of the strike was

to pressure the dealership to recognize the union as the employees' bargaining agent and to protest various unfair labor practices that the workers alleged were being committed by the company. The National Labor Relations Board subsequently concluded—and the employer did not dispute on appeal[1]—that certain of the dealership's managers violated the National Labor Relations Act when due to anti-union animus they discharged or threatened to discharge several employees, coerced striking employees through the use of surveillance tactics, abandoned their commitment to improve the employees' benefit plans, and refused to allow any striking employees to return to work despite their unconditional offers to do so. The Board thereafter issued an order directing the company to enter into good-faith bargaining with the union. 333 NLRB No. 127. We enforce the order of the Board.

## I.  FACTUAL BACKGROUND

Michael Chiarito, a porter at Orland Park Motor Cars's Mercedes-Benz dealership, arranged for officials from Teamsters Local #731 to meet with the company's non-mechanical service employees in late August 1999 for the purpose of discussing the possibility of securing union representation. Chiarito obtained signed union authorization

---

[1] When this case was originally tried before an administrative law judge, the company disputed the allegation that it violated any provisions of the Act. In this court, however, the company has elected to contest only the Board's choice of remedies and argue that "the National Labor Relations Board erred in its finding that a *Gissel* bargaining order was an appropriate remedy." (Br. at 9.) "The Company does not challenge the Board's finding that it committed unfair labor practices in its efforts to thwart the Union election campaign, and therefore this part of the Board's Order is summarily enforced." *Livingston Pipe & Tube Inc. v. NLRB*, 987 F.2d 422, 425-26 (7th Cir. 1993).

cards from twelve out of the twenty-one workers (approximately fifty-seven percent of the workforce) between August 24 and August 30 and thereafter notified the Teamsters of the employees' wishes to join the union.

Chiarito's attempt to organize his fellow employees was opposed by members of Orland Park's management team. For example, during the union membership drive, the company's service manager, Michael Maus, asked two employees, "Who started the union?" and stated that when he found out the organizer's name he would "f---king fire" the man. Maus later made similar threats in the presence of Chiarito. The company's vice-president and general manager, Barry Taylor, allegedly advised several employees that they should vote against the union because "any organizational drive would be futile." Taylor also called a meeting with the employees on August 30, 1999 and was alleged to have told them that in light of the union activity he was withdrawing his previously expressed commitment to improve the firm's employee benefit plan. Orland Park has not challenged the Board's ruling that Maus and Taylor's actions were motivated by an intent to undermine majority support for the union.

After the conclusion of Taylor's meeting and comments to the employees on August 30, union officials approached Taylor in his office and demanded that Orland Park recognize Teamsters Local #731 as their collective bargaining representative. When Taylor refused, the employees walked off the job and set up a picket line on the sidewalk in front of the entrances to the dealership. The Board found—and the company did not contest during oral argument—that certain Orland Park officials participated in a number of unfair labor practices during the month-long strike. For example, on September 2, the company's finance and insurance manager, Todd Koleno, paused while walking through the picket line and informed the picketers that they were "going to be fired" or otherwise lose their jobs. The

company's dispatcher, Al Sizemore, followed through on this threat the following day by terminating Brad Patrylak, an employee who was on strike at the time. When Patrylak approached Sizemore's desk and attempted to pick up his paycheck for work performed prior to the strike, Sizemore handed Patrylak his check and advised him that this was his "last" check, for he was fired "like the rest of them outside." Almost four weeks later, despite the fact that many of the strikers had made unconditional offers to return to work on September 29, General Sales Manager David Nocera terminated Chiarito and further stated that the remaining employees who had participated in the strike also "were no longer employees of the company."[2]

The administrative law judge found that the company's actions violated three separate provisions of the Act. Specifically, the judge ruled that the employer: (1) violated § 8(a)(1) of the Act by coercing or interfering with the employees' right to form and join a labor union; (2) violated § 8(a)(3) of the Act by engaging in discriminatory hiring practices in order to discourage the employees from forming and joining a labor union; and (3) violated § 8(a)(5) of the Act by refusing to bargain with Teamsters Local #731 after the union had been designated by the employees as their collective bargaining agent of choice. The Board determined that the appropriate remedy for Orland Park's unlawful activity was to: (1) order Orland Park to cease and desist its unfair labor practices; (2) offer full reinstatement with back pay to any striking employee who was discharged; and (3) engage in collective bargaining with the union.

---

[2] Orland Park subsequently mailed letters to some of the employees stating that they had been placed on a "preferential hiring list," but only one man was offered a position—and this offer was not made until December 23, 1999, just two weeks prior to the commencement of the initial hearing in this case before the National Labor Relations Board.

## II. DISCUSSION

This matter comes before the court on a petition for enforcement filed by the National Labor Relations Board. The sole argument raised by Orland Park in opposition to the Board's petition is that it was improper for the Board to order the company to initiate collective bargaining with the Teamsters union. We review the Board's decision to impose a bargaining order for an abuse of discretion. *NLRB v. Intersweet Inc.*, 125 F.3d 1064, 1067 (7th Cir. 1997).

Congress has entrusted the Board with eliminating the effects of an employer's unfair labor practices and protecting the rights of employees to determine, in an environment free of coercion and interference, whether or not to join a labor union of their choice. If a majority of employees have signed authorization cards designating a particular union as their representative, but the employer has engaged in unfair labor practices during an organizational campaign which have had "the tendency to undermine majority strength and impede election processes," then after a hearing the Board is empowered to certify the designated union and order the company to enter into collective bargaining with that union. *NLRB v. Gissel Packaging Co.*, 395 U.S. 575, 614 (1969).

The agency is required to conduct a fair, impartial, and detailed analysis before imposing a bargaining order so as to rule out the possibility that other less intrusive measures would compensate for the damages caused by an employer's unfair labor practices. Orland Park maintains that the Board improperly imposed a bargaining order in this case, alleging that the Board failed to explain why other remedies (such as issuing a cease-and-desist order and holding another election in a closely monitored environment free of coercion) would have been insufficient to protect the organizational rights of the company's employees. The employer relies heavily on *Peerless of America Inc. v. NLRB*, 484 F.2d 1108 (7th Cir. 1973), to support the position that a bargain-

ing order is inappropriate. In *Peerless*, we stated that the
Board's decision to issue such an order must be accompa-
nied by "'specific findings' as to the immediate and residual
impact of unfair labor practices on the election process . . .
and 'a detailed analysis' assessing the possibility of holding
a fair election . . . and the potential effectiveness of ordinary
remedies." *Id.* at 1118. Orland Park argues that the Board's
order in the case before us, like the order in *Peerless*, fails
to contain the "detailed analysis" and justification of the
Board's choice of remedies that is required by our case law.
We disagree with the company.

Orland Park's discussion of the applicable legal standards
ignores this Circuit's post-*Peerless* cases, which have elab-
orated upon the "detailed analysis" requirement and made
clear that the Board's analysis needs only to be sufficiently
detailed to "permit the court to perform its task of judicial
review." *Justak Brothers v. NLRB*, 664 F.2d 1074, 1081 (7th
Cir. 1981). "Although we will find an abuse of discretion if
the Board fails to adequately consider alternatives and
explain its choice, we will not otherwise disturb the Board's
decision unless it can be shown that the order is a patent
attempt to achieve ends other than those which can fairly
be said to effectuate the policies of the Act." *Intersweet*, 125
F.3d at 1068 (quotation omitted). As we stated in *Justak
Brothers*, 664 F.2d at 1081, the "detailed analysis" require-
ment enunciated in *Peerless* should be understood in light
of its purpose of insuring judicial review of the Board's
orders. The requirement

> is meant neither to burden the Board nor to curtail the
> issuance of bargaining orders. Elaborate explanations
> are not essential; indeed, scientific accuracy in estimat-
> ing the impact of unfair labor practices is impossible.
> Rather we only require that the Board delineate the
> factors that it considers in its estimation and describe
> how those factors have been weighed.

*Id.*

The company's argument that the Board should have made "more specific findings" appears to be a disingenuous attempt to force the Board to provide the type of "elaborate explanations" that *Justak Brothers*, *Intersweet*, and other cases have determined to be unnecessary. Upon review, we hold that the Board complied with its mandate under the law to explain and justify its decision when issuing the bargaining order in this case. *See America's Best Quality Coatings Corp. v. NLRB*, 44 F.3d 516, 522 (7th Cir. 1995); *NLRB v. Berger Transfer*, 678 F.2d 679, 694-95 (7th Cir. 1982). Initially, the Board identified and discussed the company's undisputed unfair labor practices, such as its repeated threats to discharge labor organizers, its termination of a leading and outspoken union organizer, its retaliatory refusal to implement previously advertised improvements to the firm's employee benefits plan, its coercive surveillance of employees on the picket line, and its refusal to reinstate the striking employees despite their unconditional offer to return to work. The Board reasonably found that such violations were likely to chill the employees' future exercise of organizational rights, for the violations: (1) were committed by no less than three senior managers in the company who remained in positions of authority as of the date of the Board's order; (2) were widely known by the employees in the putative bargaining unit; (3) began within days of the organizational drive and continued throughout the month-long strike; and (4) never were repudiated by the company. In addition, the Board reasonably determined that an election would be infeasible and would fail to reflect the true attitudes of the workers because most employees "would not likely risk again incurring the company's wrath and another period of unemployment by resuming their union activities." Finally, the Board rejected the company's argument that a bargaining order would undermine the § 7 rights of any employees who might oppose joining the union, stating that these workers will remain free to call for an election to decertify the bargain-

ing unit at some point in the future if the union fails to represent their interests. 29 U.S.C. § 159(c)(1).

We recognize that in many cases an employer has the right to request a representation election if a majority of employees have signed union authorization cards designating a particular union as their collective bargaining agent. However, the Board may determine that the employer has forfeited its right to call for an election by engaging in conduct that is likely to undermine majority support for the labor organization and disrupt the potential for fair elections. *See Gissel*, 395 U.S. at 612-15. In the case before us, the NLRB concluded that Orland Park's unfair labor practices were so pervasive that any election would be unlikely to reflect the true sentiment of the service employees who were members of the putative bargaining unit. The Board's analysis has allowed for meaningful judicial review and has explained the basis of its decision. Because the Board's order is lawful, rational, supported by substantial evidence, and sufficiently detailed in compliance with existing case law, we are obligated to enforce the order as issued. *See, e.g., America's Best*, 44 F.3d at 522; *NLRB v. Q-1 Motor Express Inc.*, 25 F.3d 473, 481-82 (7th Cir. 1994); *Berger Transfer*, 678 F.2d at 694-95.

In reaching this decision, we reject the employer's argument that the Board should have provided a more extensive discussion regarding whether mitigating circumstances, such as employee turnover, have defeated the need for a bargaining order. It might very well have been an abuse of discretion if the Board had ignored evidence presented by the employer establishing that relevant circumstances at the company had significantly changed between the time of the employer's unfair labor practices and the time that the Board's bargaining order was issued. *See Impact Indus. v. NLRB*, 847 F.2d 379, 383 (7th Cir. 1988). However, the burden rests on the employer to present the Board with evidence of turnover prior to raising

such an argument in federal court. The Board has no affirmative duty to inquire into employee turnover unless the issue is first raised by the employer. *NLRB v. USA Polymer Corp.*, 272 F.3d 289, 295-96 (5th Cir. 2001); *Traction Wholesale Center Co. v. NLRB*, 216 F.3d 92, 108 (D.C. Cir. 2000). Orland Park failed to argue the issue of turnover before the Board, and thus it cannot do so now. *LSF Transp. Inc. v. NLRB*, 282 F.3d 972, 983 (7th Cir. 2002); 29 U.S.C. § 160(e).

### III. CONCLUSION

We hold that the Board's analysis has adequately identified and discussed the unfair labor practices committed by Mercedes Benz of Orland Park, demonstrated that the effect of these unlawful practices undermined the potential for a fair election, and balanced the relevant interests prior to issuing a bargaining order in the case before us. The order of the Board is ENFORCED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*
